## Elliott Harvey v. The State.

No. 23606. Delivered March 12, 1947.
Rehearing Denied April 23, 1947.

*Putney & Ritchey,* of Victoria, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of fifty years in the penitentiary on a charge of murder.

The appellant was a bar tender in the Shady Grove beer parlor situated in the outskirts of the City of Cuero. The offense is alleged to have been committed on Sunday night May 5th, 1946, and it appears that a number of patrons were in the bar room where sandwiches and beer were being served. From the scrambled testimony of the few witnesses who were able to testify that they heard a pistol shot above the noise of the nickeldeon, the crashing of glass, the throwing of beer bottles, and the cursing, we find the much controverted facts which we summarize as follows:

James McPherson, Sr.; his son James McPherson, Jr., and his daughter Maxine Brown, together with her husband, Johnnie Lee Brown, were patrons of the place and had been drinking beer and eating sandwiches for some time immediately preceding the difficulty. Johnnie Lee Brown is a brother of the wife of appellant and, while there is some intimation from questions asked that family difficulties had preceded the occasion, we have no evidence to that effect. McPherson, Sr. was called upon by Brown to pay for two bottles of beer and a sandwich. This he declined to do, and reached in his pocket for his knife. Brown reached for his knife and some cursing took place. McPherson, Jr. intervened, took the knives away from them and rather peacefully lead the father out of the room while his sister, the deceased, looked on. After getting his father well started on the road home, the younger McPherson returned to the beer parlor and, as he approached, found his sister lying beside the path leading to the roadway mortally wounded probably already dead. With the help of another, he put her in a car and took her to the hospital where she was at once pronounced dead. The Sr. McPherson went home without knowing what had happened and learned of it some thirty minutes later.

This, together with a denial that any controversy had taken place between the Sr. McPherson and appellant while they were in the beer parlor, and a written confession by appellant that he fired the shot which killed Maxine Brown, constitute the state's principal evidence from the witnesses produced in chief. The written confession introduced tells a little different story. According to such statement the Sr. McPherson became angry at appellant and struck at him with an open knife two or three times, cursing him as he did so. The son and daughter together dragged the Sr. McPherson from the place, during which time

the father was throwing beer bottles, broke out a window light, and attempted to get to appellant. As they left the building appellant procured a pistol, went out the back door and around the house toward the front where he saw the son and daughter struggling with the elder McPherson who made a dash towards appellant, threatening his life. Appellant shot at the Sr. McPherson but instead struck Maxine. He then returned by the same entrance and sat down in the empty room, no one being left except the wife of the proprietor.

Appellant testified in his own behalf giving much the same statement as that contained in his written confession. He attempted to modify it somewhat, however, and claimed that it was not written exactly as he had given it. This difference we consider immaterial.

The only question presented in the case which we feel requires discussion is the sufficiency of the evidence to support a conviction for murder with malice. On this subject the appellant's testimony in his own behalf makes the evidence definitely sufficient. He says that when the trouble arose between the Sr. McPherson and Brown, appellant attempted to intervene to stop it and that McPherson came towards appellant, cursing him, and struck two or three times across the counter with his knife. As the son was dragging him out McPherson threw a beer bottle back at him and cursed him again, calling him a very vile name. At this time appellant grabbed the gun from under the counter and went out the back door and around to the front of the house where he saw the father and son "discussing it" together. McPherson again cursed him and tried to pull loose, whereupon appellant fired the shot. Appellant's wife also testified along the same line. She observed that the son and daughter were not acting friendly. Before the parties got out of the house she left and went to her home to secure help. She did not see the shooting.

It is not necessary to define legal malice. It does not have its popular meaning of hatred, ill will, or hostility towards another, but includes all of those states of mind in which a killing takes place without any cause which will in law justify, excuse or extenuate the act. It may exist without any former grudge or antecedent menace. It is a question of fact, inferable from the circumstances, and is generally supported by proof that the killing took place by means of the use of a weapon that is deadly per se. It may be inferred when a person fires a pistol in the direction of another, knowing that, if the latter is struck, serious

bodily injury or death may result. It must be observed, however, that such circumstances do not necessarily constitute malice and the question which arises is usually one for the jury. Simmons v. State, 19 S. W. (2d) 44.

The question of time is not always a necessary ingredient forming the circumstances, as it may be of such short duration as to be incapable of measurement. While other observations might be added, this is probably sufficient to treat the question as it has been presented. We think the evidence supports the jury's finding and this court has no responsibility in the matter of fixing the punishment other than to see that it was within the legal power of the jury which assessed it.

The judgment of the trial court is affirmed.

### APPELLANTS' MOTION FOR REHEARING.

DAVIDSON, Judge.

By motion for new trial, appellant claimed jury misconduct. Three assignments alleged jury separation, each claimed to have occurred in violation of the provisions of Art. 623, C. C. P. prohibiting the jury to separate. Another assignment claimed that the jury drank intoxicating liquor during the progress of the trial and before verdict had been reached  The motion requested that the jurors be summoned in order that evidence might be heard upon the allegations of the motion.

Upon the hearing of the motion, three of the jurors testified. It would serve no useful purpose to detail the testimony of the jurors touching the assignments of the motion for new trial above mentioned. It is sufficient to say that facts did not establish either jury separation or drinking of intoxicants, as charged. However, during the examination of the jurors, the juror Frels testified as follows:

"Yes, sir, I said I was taken on Monday afternoon. After court adjourned Monday afternoon and from that time until Tuesday morning a fellow from Yorktown, I believe, I believe Bumba they call him, was in charge of the jury. They all called him Bumba. Yes, sir, Herman Bumba. He was with the jury panel all that afternoon and that night "

These are the only facts touching thereon and are not denied. The record does not reveal who Bumba was—that is, whether he was such an officer as was authorized to be and remain with the jury during the trial or to be in charge thereof.

Appellant takes the position in this court that such facts show or raise the issue that an unauthorized person was present and conversed with the jury during the trial, in violation of Art. 671, C. C. P.

A determination of this contention depends, primarily, upon whether the question is properly before us for consideration.

It will be noted that the motion for new trial contained no allegation or assignment by which it could be said that appellant was insisting that a new trial should be granted upon the jury's misconduct, as now insisted upon.

A motion for new trial is not necessary to secure or present for review in this court errors claimed to have occurred during the trial of the case and properly presentable and reviewable only by bills of exception or exceptions or objections made and reserved during the trial. A different rule exists, however, when a new trial is sought upon matters occurring or arising dehors the trial proper, such as jury misconduct as here presented. As to such matters, a motion for new trial is necessary. An essential element of such a motion is that the matter of error relied upon for a new trial must be specifically set forth therein. Art. 756, C. C. P.; 4 Tex. Jur., p. 106, Sec. 70; Tex. Jur., p. 300, Sec. 97. The wisdom of that rule lies in the fact that reasonable notice should be given not only to the trial court but the State, as well, as to the misconduct relied upon and to prevent a purely fishing expedition on the part of the accused.

The rule stated is applicable and controlling here, for the motion for new trial contained no allegation that jury misconduct occurred in the particular now asserted. Indeed, after the evidence had been adduced, the motion for new trial was not amended so as to incorporate therein an assignment that an unauthorized person conversed with a member of the jury during the trial. So far as this record reveals, there is nothing to show that the trial judge had notice of or knew that appellant was claiming that a new trial should be granted by reason of the testimony showing that Herman Bumba was with the jury and in charge thereof during the trial.

Not having incorporated in the motion for new trial an assignment or otherwise acquainting the trial court with the fact that appellant was claiming jury misconduct in the particular mentioned, the question is not before us.

Accordingly, appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.