The judgment will therefore be reversed and the cause remanded.

## CASSELL v. STATE.

### No. 24158.

Court of Criminal Appeals of Texas.

Dec. 8, 1948.

Rehearing Denied Jan. 19, 1949.

W. E. Pinkston, of Dallas, for appellant.

Will R. Wilson, Jr., Cr. Dist. Atty., George P. Blackburn, 1st Asst. Dist. Atty., Waller M. Collie and Frank C. Moore, Jr., Asst. Dist. Attys., Douglas E. Bergman, Sp. Prosecutor, all of Dallas, and Ernest S. Goens, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is death.

Appellant challenges the sufficiency of the evidence to sustain his conviction.

The evidence adduced by the state, briefly stated, shows that appellant and Eddie Hamilton killed Lester Linwood Wilson with a piece of iron pipe while burglarizing the "Sportsmen's Center," a store owned and operated by one James M. Brooks. It appears from the record that appellant and his companion entered the back door of a secondhand furniture repair shop where the deceased was employed and where he slept at night. After they had entered the repair shop which was in an adjoining room to the "Sportsmen's Center," they noticed that the deceased was on his bed asleep; they picked up a piece of pipe about three feet long and struck him several blows on the head, crushing his skull which resulted in severe injuries to his brain which caused his death. They then prized open a door in the partition wall between the repair shop and the "Sportsmen's Center" and took therefrom a hunting jacket and two pistols: one a .38 caliber S&W Special and the other a .38 caliber Savage automatic. A few days later they took the .38 caliber S&W Special to Abe Abramson's pawn shop and offered to pawn it to Abramson for the sum of $15. Abramson had been notified of the burglary by the police, who had given him the serial number of the pistol in question and he had been asked to notify the police in case anyone came to pawn the pistol. Abramson took the pistol to the rear of his pawn shop and compared the serial number thereon with the serial number of the stolen pistol furnished by the police and found that the numbers corresponded. He inquired of appellant and his companion where they had obtained the pistol and on being told that they had bought it, he informed them that he was going to call the police, whereupon they hurriedly departed leaving the pistol in the possession of Abramson. Some days later they pawned the Savage automatic pistol to one A. T. Scott for the sum of $3. After appellant and Eddie Hamilton were arrested they told the officers where the Savage automatic pistol was and accompanied the officers to the Union Council where A. T. Scott was engaged in the drug and grocery business, and from whom the officers recovered the stolen Savage automatic pistol. Appellant made a verbal confession to the officers which led to the recovery of the Savage automatic pistol. He later made a written confession. On the trial of his case he repudiated the confession, but admitted that he signed it because the officer to whom he made the confession had promised to help him out all he could and in addition to the promise of help, he, the officer, had told him to sign it. His only defense was an alibi. In our opinion, the evidence is ample to sustain the jury's conclusion of his guilt.

Appellant filed a motion to quash the indictment. He based his motion on two grounds, first: because the indictment is vague, indefinite and uncertain, in this, that it charges that he killed the deceased by striking him with a piece of pipe; that the character of the piece of pipe is not sufficiently described to put him on notice of what he would be required to meet on the trial of the case. This identical question was before this court in the case of Beaver v. State, 63 Tex.Cr.R. 581, 142 S.W.

11, 12. In disposing of the question in that case, this court, speaking through Judge W. L. Davidson, among other things, said, "The indictment charges that the instrument used by appellant was a piece of pipe. * * * We are of the opinion that the indictment sufficiently describes the instrument, and there was no error in overruling the demurrers." We think that the opinion expressed by Judge Davidson announced a correct rule. Hence, there is no need for any further discussion of the question.

His next complaint in his motion to quash the indictment is based on the ground of race discrimination practiced by the jury commissioners who selected the grand jury which returned the indictment herein against him. He charged that he was a Negro; that the deceased was a white man; that no Negro was selected by the jury commissioners as a grand juror; that there were from five to ten thousand adult male Negroes, resident citizens of Dallas County, Texas, who were qualified for grand jury service, being about one-seventh of the jury population of Dallas County, Texas; that the jury commissioners who selected the grand jury were white men; that they selected no Negro to serve on the grand jury; that in doing so they discriminated against the Negro race, and thus denied him the equal protection of the law guaranteed him under the 14th Amendment to the Constitution of the United States.

The trial court heard evidence relative to the allegations of race discrimination. Appellant called as witnesses the three jury commissioners to support the allegations in his motion. Each one of the jury commissioners testified in substance that they did not discriminate against the Negro race in the selection of grand jurors; that they sought to select fair and impartial men who were qualified for grand jury service; that they were instructed by Judge King not to discriminate in any way against any race or creed; that he did not tell them that they had to put a Negro on the grand jury; that it was up to them; that it applied to Mexicans and Italians as well. One of the members of the jury commission contacted the principal of the Negro high school, who is a Negro, but he said that he could not

serve—that his time belonged to the city schools; that he knew Negro doctors, school teachers, and lawyers, but no one could hardly expect them to neglect their professional duties to their patients and clients to serve for a period of three months on a grand jury. He further testified that before they selected any grand jurors, they contacted men who they knew were qualified to ascertain if they could and would serve. Although there was no Negro selected by them for grand jury service, there was no intentional discrimination by them against the Negro race.

Appellant next called A. C. Partee, who testified that he lived in Dallas County; that he is Executive Secretary of the Progressive Voters' League; that in that capacity he maintained a list of qualified Negro voters in Dallas County; that he would estimate that the adult male voting strength of the Negro race in Dallas County is about five thousand five hundred; that figure includes both poll taxpayers and poll tax exemptions; that if a Negro had been selected as a grand juror for the October Term, he would have known about it; that he knew the names of some Negroes who have served on grand juries, to-wit: Travis Clark, S. W. Hudson, Jr., W. Barton Beatty, Jr., T. W. Pratt, C. F. Stark, and L. M. Turley. The record further discloses that since the year 1943, Negroes were selected as and served as grand jurors at each and every term of court up to October, 1947, when this indictment was returned. It occurs to us that an issue of fact was raised by the evidence which the court, in the exercise of his discretion, determined adversely to appellant, and the court's determination of the issue is binding on this court as much so as if the issue had been decided by a jury. We think that the court was justified in overruling the motion to quash the indictment unless it can be said that a failure to select one or more Negroes for grand jury service at each and every term of court when a grand jury is impaneled is in and of itself conclusive evidence of race discrimination, notwithstanding the fact that Negroes were selected for grand jury service at every preceeding term of court for a number of consecutive years. We have not found any case in which a court has held

that it is imperative that one or more Negroes be selected on each and every grand jury in order to comply with the equal protection of the law.

By Bill of Exception No. 2 appellant complains because the court declined to submit to the jury his specially requested charge to the effect: "that if they believed from the evidence beyond a reasonable doubt that Lee Cassell made the oral and written confessions introduced in evidence * * *, but the same were not voluntarily made, or that he was induced by promises made to him by the officers taking the confession, or that he was not warned while under arrest before making same, then, in such event, you are instructed not to consider either of the confessions for any purpose." The court declined to give this charge because the court had fully instructed the jury in his main charge relative to each of the confessions.

Bill of Exception No. 3 reflects the following occurrence: Before the argument to the jury began, appellant noticed that the wife of the deceased and two other relatives moved from the spectators' section of the courtroom to near the prosecuting attorney's seats, to which appellant objected on the ground that they would cry, wipe their eyes with handkerchiefs, and thereby unduly influence the jury to his prejudice. The court overruled the objection and he excepted to the ruling of the court. The court qualified this bill by certifying that no written motion was presented to him, but does certify that before the argument commenced, the attorney for defendant stated to the court that the relatives of the deceased were sitting in the first row of seats within the rail, next to the state's attorney, and that they would be crying and this, in connection with their movements, would influence the jury. The court further certified that the persons referred to did nothing during the argument which, in his opinion, was improper or would influence the jury in the least. The court declined to certify that said persons began to cry and wipe their eyes with handkerchiefs during the argument; that the objection made by counsel was based upon anticipation that they would do so. The bill as thus qualified

was accepted by appellant and he is bound thereby. The bill as qualified fails to reflect error.

Bill of Exception No. 4 shows that at the conclusion of all the evidence and before the court delivered his charge to the jury, appellant objected thereto on the ground that the court failed to instruct the jury on the law of murder without malice. Art. 1257c, Vernon's Ann.P.C., provides: "It shall be the duty of the court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection." We do not believe appellant was entitled to such an instruction since there was not the slightest evidence of any adequate cause. Appellant did not claim self-defense. His only defense was an alibi. If he was not present at the time and place of the commission of the alleged offense, he was entitled to an acquittal and not to a charge on the law of murder without malice.

By Bill of Exception No. 6 he complains of the action of the trial court in declining to submit his special requested charge to the effect that in the event the jury should decide to disregard the oral and written confessions of the defendant upon the grounds set out by the court in his main charge, then the case depended upon circumstantial evidence, followed by a charge upon the law of circumstantial evidence, or to incorporate one of like import. The trial court in his main charge, among other things, instructed the jury as follows: "You are further instructed that if both the oral and written confessions, if any, were not obtained in a manner as hereinbefore set out in this charge, or if you have a reasonable doubt thereof, then you will acquit the defendant." The court had theretofore instructed the jury relative to the requirement of the law pertaining to both of the confessions to be admissible in evidence **and to**

be considered by the jury. It occurs to us that this is all that appellant was entitled to.

By Bill of Exception No. 7 he complains of the court's action in declining to instruct the jury to return a verdict of not guilty. This matter was fully discussed by us in passing upon the sufficiency of the evidence to sustain his conviction.

By Bill of Exception No. 8 he complains of the insufficiency of the evidence to identify the Savage automatic pistol taken in the burglary which was the basis upon which the oral confession was admitted in evidence. The record reflects that Mr. Brooks testified as follows: "This is a .38 Savage automatic, my personal gun, that was stolen from me the night of September 22nd. It was stolen in that burglary. This is an old gun * * *, the serial number can be checked, offhand, I don't know the serial number. I can only identify it by its barrel which is very badly pitted; * * * I say that this is my gun. In my own mind I can be positive that this is my gun. I cannot swear to it." Under the facts here disclosed, we would not be authorized to hold as a matter of law that the Savage automatic pistol was not identified as the pistol taken from the burglarized premises on the night in question. The opinion is here expressed that appellant's objection to the manner of identifying the pistol in question went more to the weight of it than to its inadmissibility.

His complaint relative to the court's failure to instruct the jury on the law of circumstantial evidence is, in our opinion, without merit. It is only necessary to charge thereon when the case depends entirely upon circumstances. See Branch's Ann.P.C., page 1039, Sec. 1874, where many cases sustaining the opinion here expressed are cited.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

On Appellant's Motion for Rehearing.

DAVIDSON, Judge.

Appellant insists that we erred in reaching the conclusion that the record did not reflect discrimination against members of the Negro race in the selection and impaneling of the grand jury which returned the indictment in this case. He insists that he is supported in his contention by the decisions of the Supreme Court of the United States and especially those of Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84, and Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559.

We are familiar with the holding in those cases, as the decision of this court was reversed in each case. We are perfectly willing to follow the holding in those cases and will not hesitate to do so when thought controlling. But we cannot bring ourselves to that conclusion in this case.

It is our opinion that the case of Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692, by the Supreme Court of the United States, sustains the conclusion reached in our original opinion.

In the cases involving the question of race discrimination in the organization of grand juries, we must not lose sight of the fact that the sole and only question involved is a determination as to whether race discrimination was practiced. It is not a question as to whether a member of the Negro race should or should not have been drawn and impaneled on the grand jury. Nor is it a question as to the inequality in the numbers who serve or a comparison, upon a percentage basis of population, between the white and Negro citizens who are eligible for grand jury service. No person has the right to say that a member of his race shall be impaneled on the grand jury. Nor does proof, merely, that a member of the Negro race is not impaneled upon the grand jury establish that discrimination has been practiced against members of that race, in the organization of the grand jury.

Such is our understanding of the holding in the Akins case, supra, not only in the majority but also in the dissenting opinion.

Dallas County, where this prosecution was maintained, has two district courts hav-

ing jurisdiction in criminal cases. Each of these courts impanels two grand juries each year. Grand juries are impaneled in January, April, July, and October of each year.

The instant record deals with grand juries impaneled beginning with the October term, 1942, and through the October term, 1947, at which term the instant indictment was returned. This period of time accounts for twenty-one consecutive grand juries in Dallas County. A member of the Negro race was upon each of those grand juries, save and except October, 1943, April and October of 1946, and April and October, 1947.

The record does not reflect the number of Negroes summoned for grand jury service and not impaneled on the grand jury during that period of time; nor is it shown that on those grand juries upon which no member of the Negro race actually served, no Negro was summoned for grand jury service at those terms and excused by the court.

Under the statute law of this State, sixteen men are summoned for grand jury service, from which the grand jury of twelve are selected. Art. 338, C.C.P.

Proof, merely, that a member of the Negro race did not serve on the grand jury by no means establishes that no member of that race was not selected by the jury commissioners to do grand jury service.

Under the facts mentioned, we cannot bring ourselves to the conclusion that this case comes within the rule announced by the Supreme Court of the United States that the systematic exclusion of Negroes from grand jury service evidences race discrimination. Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074.

The record before us reflects that there were 5,500 Negroes in Dallas County qualified to vote. But the qualification to vote is but one of the qualifications for grand jurors. Art. 339, C.C.P. It could hardly be said, then, that this record reflects there were 5,500 Negroes in Dallas County qualified for grand jury service.

Viewing this record as a whole, we can arrive at but one conclusion and that is that since the decision of the Supreme Court of the United States in the Hill case, supra, the officers of Dallas County have earnestly endeavored to comply therewith and to do no act whereby it could be said that members of the Negro race had been discriminated against in the organization of the grand juries. Indeed, the district judges had endeavored to impress upon the jury commissioners that fact, and had done about everything a judge could do to effect that end, save and except to instruct the jury commissioners to select members of the Negro race for grand jury service, which instruction, if given, would be contrary to law.

The jury commissioners, who drew the list of grand jurors from which the grand jury that returned the indictment against appellant, appear to have contacted members of the Negro race who they thought possessed the qualifications of grand jurors, with a view of having them serve on the grand jury, and refrained from placing them on the grand jury, at their request. While it is true the jury commissioners were not clothed with the authority to pass upon excuses of those eligible for grand jury service, yet it appears to us that this conduct on the part of the jury commissioners fortifies and supports them in their position that they did not discriminate against members of the Negro race in drawing the grand jury that returned the instant indictment.

Believing that appellant has failed to show race discrimination in the organization of the grand jury, as alleged, his motion for rehearing is overruled.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.