EMMA OLIVER V. STATE.

No. 24984.  December 13, 1950.
Appellant's Motion for Rehearing
Denied February 14, 1951.

*Sam L. Harrison* and *Theo P. Henley,* San Antonio, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Emma Oliver was convicted and assessed the death penalty for the murder with malice of Herman Cohn by cutting and stabbing him with a knife.

Shortly after midnight two police officers in response to a call went to a two-story building in the 2300 block of East Commerce Street in the city of San Antonio. The building consisted of some ten apartments, three of which were on the ground floor, and the officers were looking for a dead body.

The officers looked through the upstairs apartments, and upon coming downstairs they met appellant. They went into one of the downstairs apartments, but did not enter another where a light was seen because appellant told them that the light they saw was in the same room they had previously entered.

They returned to headquarters without finding the corpse, but returned shortly in response to a second call. On this occasion they found in the room of the building where the light had been seen, the dead body of the deceased, described as "a well developed and well nourished colored male about 40 years of age."

There was found on the body a penetrating wound in the left chest which penetrated the pericardium (the sack that contains the heart). The wound was, in the opinion of the county health officer, such a wound as could have been caused by the knife which was taken from appellant.

And the doctor testified that the wound caused the death of the deceased.

Millard O'Conner was at the house when the officers returned, and showed them where the body was. He testified that he discovered the body when he went to appellant's room to await her return.

After discovery of the body, Officer Fest went to a place across the street and found appellant standing there. That appellant said: "Here I am * * * I killed him." That he took from her a knife which was identified and offered in evidence, and which knife was described as a deadly weapon by witnesses.

The body of the deceased was lying on the floor. No knife or weapon was found there. In deceased's pockets were found only a pocket book with 51 cents in money, and a check payable to the L & M Lumber Company for $510.00, signed by Mr. T. E. Barnes of the Austin or East End Lumber Company.

The bed in the room where the body was found was disarranged and had the appearance of having been occupied.

A red truck with a long bed and trailer was parked a few doors from the house, and officers had made inquiry of appellant and others about it.

Mary Williams testified as an eye witness to the killing. She said that appellant called her and told her to stay with "the man who was locking the truck up." She said that the man came into the room where appellant was living, and that she talked to him while appellant left for a time, presumably to make a telephone call.

She further testified that when appellant returned, the deceased was lying on appellant's bed and that she, the witness, was sitting on a box by the dresser. Appellant remarked that "the cab will be here in a few minutes," and demanded that the deceased pay her three dollars. When deceased failed to comply with such demand she repeatedly demanded that he pay her three dollars, he either ignoring the demand, agreeing to pay her when the cab arrived, or saying that he did not have three dollars, and finally giving her one dollar.

She then repeatedly demanded an additional two dollars.

The witness described the actual killing and the events thereafter as follows:

"She said 'give me two more dollars' and he said he did not have two more dollars. Emma Oliver grabbed Herman Cohn by the shirt with her left hand and she reached in her hip pocket like that and she struck him with the open knife. In a minute or two I heard something running like water from a hydrant and I looked and I could see blood running from his chest

down to his britches and he grabbed his stomach, and he didn't say anything and then he walked to the dresser and laid his head on the dresser and he said 'Oh Lord, Oh Lord.' Then Emma Oliver looked at him for a minute and she raised his head off the dresser and said, 'Don't die on my dresser m----r f----r' and he fell off the box to the floor and she started out the door and I started out the door with her and she pushed me back and said, 'I will kill you too' and told me I had better stay there and I went back in. She left and came back and went in the room and said 'Let's go' and we left and went to a beer tavern where she bought me and her a bottle of beer."

"She told me not to say anything about it. She said 'You had better not say anything about it, or I will kill you' and I said I would not say anything about it."

"Later on that night she said she would put him in the truck and drive down the road. She said I know that you can drive and I am going to put him in the truck and take him down the road. I told her I would take the truck. That was discussed outside the room at 2320 East Commerce Street. The stabbing I have described occurred in that room.

"After the stabbing we went to the Harlan Inn and stayed there about an hour or so drinking beer and playing music.

"At the time of the stabbing Emma Oliver appeared to me to be sober and in her right mind.

"At the time of the stabbing there was no one present but Emma Oliver, Herman Cohn and I."

Appellant did not testify.

The facts are sufficient to support the conviction for murder with malice, and the punishment was within the province of the jury. We overrule appellant's contention that no malice is shown. The statements and conduct attributed to appellant after she stabbed the deceased are, in themselves, evidence tending to show that appellant acted with malice. Malice is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief. Its existence is a question of fact inferable from the circumstances. See Harvey v. State, 150 Tex. Cr. R. 332, 201 S.W. 2d 42.

Bill of Exception No. 2 complains that no member of the Negro race was appointed or served on the jury commission that selected the grand jurors, nor on the grand jury that indicted appellant.

This bill only shows that such contention was contained in appellant's motion for new trial. There is no showing as to what facts were adduced upon the motion other than what appears to be a statement of facts in question and answer form as prepared by the court reporter. In addition to its question and answer form, such statement is not approved by the trial judge, and cannot be considered for both reasons. See Art. 760, C.C.P., Sec. 1; Gifford v. State, 101 Tex. Cr. R. 7, 274 S.W. 149.

We know of no decision of our courts, either state or Federal, which holds that discrimination is shown by the mere fact that no person of the Negro race was appointed or served on the grand jury which indicted a member of that race, or on the jury commission that selected such grand jury. Our decisions are to the contrary. See Cassell v. State, 154 Tex. Cr. R. 648, 216 S.W. 2d 813, 339 U.S. 282, 70 S. Ct. 629, 94 L.E. 563; Weems v. State, 148 Tex. Cr. R. 154, 185 S.W. 2d 431, 435; Ross v. State, (Not yet reported), 233 S. W. 2d 126, 138.

Also this bill does not show that appellant is a Negro, or that appellant was prejudiced in any way. It merely states a ground of objection, and no facts are certified which show that the grounds of objection are true.

Bill of Exception No. 3, as prepared by the court after his refusal to allow appellant's bill on the subject, complains of the argument of the district attorney, and the demonstration of the audience in response thereto. The bill sets forth the following remarks of the district attorney:

"That the colored man in the recent war, fought alongside the white soldiers, bleeding and dying and offering his all, and that a dead Negro's rights in the courts were to be protected the same as a white person's."

It is shown by the bill that some members of the audience, composed largely of Negroes, said, "Amen, Amen," and appellant thereupon moved for a mistrial. The court declined to order a mistrial, but then instructed the jury to base their decision solely on the evidence admitted and the law as given in the charge, and admonished the audience against any additional demonstration.

We see no harm to appellant in the argument and conduct of the audience, and no impropriety in the remarks as quoted.

Bills Nos. 4, 5 and 6 proffered by appellant were refused by

the court as not sustained by any evidence, and therefore present nothing for our consideration. See Gentry v. State, 105 Tex. Cr. R. 96, 286 S.W. 1103.

The evidence being deemed sufficient to sustain the verdict of the jury, and no error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant's motion for rehearing is lodged chiefly against the holding of this court as to the sufficiency of the evidence to show malice. We have carefully considered the record and the argument in favor of this contention and remain of the opinion that the jury is supported in its finding.

Attack is made on this court's holding as to the nature of the proof necessary to show malice in Harvey v. State, 150 Texas Crim. Rep. 332, 201 S.W. 2d 42. We have given consideration to this contention and decline to modify any expression on the subject in that case.

We have again considered Bills of Exception Numbers 3 and 4 and conclude that the holding in the original opinion expresses the judgment of the court and should be sustained.

Appellant's motion for rehearing is overruled.