Gerardo CUELLAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–95–047–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 5, 1996.

Rehearing Overruled April 10, 1997.

Crispin (C.J.) Quintanilla, III, Quintanilla & Palacios, McAllen, for Appellant.

Rene Guerra, District & County Attorney, Theodore C. Hake, Traci A. Sellman, Asst. Criminal District Attorneys, Edinburg, for Appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Gerardo Cuellar was indicted for the offense of involuntary manslaughter. After pleading not guilty, he was tried by a jury and found guilty, and punishment was assessed at five years confinement. By six points of error, Cuellar brings this appeal, alleging the trial court failed to correct or cure misconduct on the part of the jury, and complaining that appellant was denied effective assistance of counsel. We affirm.

Appellant was indicted after his vehicle collided with another vehicle in McAllen, Texas, on the afternoon of February 28, 1991, fatally injuring the driver of the other vehicle. The State presented evidence that appellant was driving at an excessively high rate of speed at the time of the accident, and it also presented evidence which suggested appellant was intoxicated at the time. An accident reconstructionist testified that, based on his investigation of the accident scene, and his tests of the vehicle models involved, he could determine that appellant was driving between 70 and 80 miles per hour in the 35 mile per hour zone. Appellant's blood alcohol level was determined to be 0.08 when measured approximately one-and-a-half hours after the accident. Appel-

lant does not contest the sufficiency of the evidence presented against him at trial.

Appellant's first five points complain about the conduct of the jury members, and the failure of the court to take corrective measures after learning about jury misconduct. In particular, appellant argues that his right to a fair trial was fatally tainted because: 1) a prospective juror told the panel that Cuellar was a gang-member who killed someone, 2) a juror withheld material information during voir dire, and 3) the jury received evidence after it retired to deliberate, and decided his sentence in a manner that was not a fair expression of opinion by the jurors. By point six, appellant complains that he was denied the effective assistance of counsel at trial.

In point one, appellant complains that during voir dire, a prospective juror informed the panel that appellant was a member of a gang, and that the trial court committed reversible error by failing to either instruct the jury *sua sponte* to disregard the comment, or declare a mistrial. When the State asked the jurors if anyone knew, or thought they knew the defendant, one prospective juror stated "Well, if he is the gang member in McAllen, yes. I mean, I don't know him, but I know the boy that he killed." The prosecutor moved to· question this potential juror on individual voir dire, outside the presence of the other prospective jurors, and the court granted the request. That person was eventually excused for cause because she had a hearing problem.

In order to preserve error for appellate review, counsel must make a timely and specific objection. Tex.R.App.P. 52(a); *Janecka v. State*, 823 S.W.2d 232, 243 (Tex.Crim.App. 1990). Absent such objection, error is waived unless it is so egregious that the failure to object does not waive the error. *Janecka*, 823 S.W.2d at 243 n. 2, (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984)). In the instant case, counsel for appellant did not lodge any objection to this allegedly prejudicial comment, nor did he request that the court instruct the jury to disregard it. Thus, we must consider any error waived unless we find that the comment was so egregious and damaging to the

appellant that no objection was required to preserve error. We do not find it so.

Appellant mischaracterizes the tone of the proposed juror's comment, as it is reflected in the record. The comment was not definitive in nature. It was qualified with "*if* he is a gang-member...." Moreover, the speaker admitted that she did not actually know the appellant. Her comment, even if construed as an assertion that appellant was a gang member, was not so egregious that its mere utterance deprived appellant of a fair trial. Appellant's relationship to a gang, or his actions thereon, has no bearing on his guilt on the involuntary manslaughter charge. Thus, the trial court was not required to *sua sponte* instruct the jury to disregard the comment. Whatever effect the comment might have had would have been alleviated through an instruction to disregard the comment, had trial counsel requested it. *See, Decker v. State,* 894 S.W.2d 475, 476–77 (Tex.App.—Austin 1995, pet. ref'd); *Rideau v. State,* 751 S.W.2d 248, 249 (Tex.App.—Beaumont 1988, no pet.) Defense counsel did not request such instruction from the court, and therefore waived this point on appeal.

### Juror Misconduct: Withholding Material Information

In points two and three, appellant complains that one jury member withheld material information during voir dire, and consequently the trial court erred in denying his timely request for a new trial. In particular, appellant protests the failure of a juror Leopoldo Ramirez to disclose in a jury questionnaire the fact that he had previously been a witness in a criminal case or the fact that he had a brother who was a probation officer.

In the instant case, the following two questions were posed to potential jurors in a jury questionnaire prior to formal voir dire:

1) Are any of your relatives law enforcement officers?

2) Have you ever been an accused, complainant, or witness in a criminal case? Ramirez answered each of these questions in the negative. Neither of these questions, nor the responses to the questions, were inquired into again during voir dire. Subsequent to the trial, appellant retained different counsel, who found out that Ramirez had a brother who was a juvenile probation officer in another county, that Ramirez had himself been an officer with the Edinburg Police Department in the past, and had been a witness in a DWI case at least once before in that capacity. Had Ramirez been truthful, the defense argued, it would have been able to inquire further into Ramirez's past and potential biases, and would have at least exercised a peremptory strike against him. This particular instance of misconduct was not specifically referred to in appellant's motion for new trial, however.

When asked about his responses on the questionnaires at the hearing on the motion for new trial, Ramirez explained that he essentially answered the way he did because he misunderstood the questions.[1] In response to the trial court's request, each of the parties submitted post-hearing memoranda. Appellant added the withholding of material information by Ramirez as an additional instance of jury misconduct in this memoranda, to which the State objected to as untimely. The trial court denied counsel's request for a new trial, and appellant challenges this decision on appeal.

■■■ A motion for new trial is the proper course to be taken in preserving alleged jury misconduct error for appeal. *Trout v. State,* 702 S.W.2d 618, 620 (Tex.Crim.App.1985). Adequate grounds for a new trial exist when a juror withholds material information in the voir dire process. *Jones v. State,* 596 S.W.2d 134, 138 (Tex.Crim.App.1980); *Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Crim.App. [Panel Op.] 1978). When a juror wrongfully withholds material information, the parties

---

1. Ramirez explained his answers as follows: he understood "law enforcement officer" to mean "a regular police officer out on the street," and he did not know whether his brother was considered a law enforcement officer in the sense of the question posed. He considered his brother to be a "correctional officer." With regard to his response to the second question, Ramirez said he understood the question as inquiring as to whether he had ever been a witness "as a civilian," rather than as an officer.

are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury.[2] *Jones,* 596 S.W.2d at 138. As the Court of Criminal Appeals explained in *Von January v. State,* 576 S.W.2d 43, 45 (Tex.Crim.App.1979), "[w]hen a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good grounds exist for a new trial."

Ordinarily, however, counsel bears the burden of asking those questions during voir dire which are calculated to bring out that information which might indicate a juror's inability to be impartial. *Armstrong v. State,* 897 S.W.2d 361, 363–64 (Tex.Crim.App. 1995) (citing *Jones,* 596 S.W.2d at 137). The failure of a juror to disclose material information is not considered to have been "withheld" unless defense counsel asked such questions during voir dire. *Id.*

We may not consider the merits of points two and three because appellant did not raise them in his motion for new trial, and therefore has not preserved this issue on appeal. Although it appears that the legislature amended the rules governing the contents of a motion for new trial to allow for more general pleadings, the Court of Criminal Appeals has held that if an instance of jury misconduct is not set forth in the motion, but is alleged in an attached affidavit or at the hearing on the motion, the trial court is without authority to entertain such additional instance. *Trout,* 702 S.W.2d at 620, (citing *Harvey v. State,* 150 Tex.Crim. 332, 201 S.W.2d 42, 45 (1947)). In order for a particular instance of juror misconduct to be properly before the court, that instance of jury misconduct must be included in the motion for new trial, which must also be accompanied by an affidavit of a juror or some other person in position to know the facts, or else include some reason or excuse for why

such affidavit is omitted. *See Trout,* 702 S.W.2d at 620, and *Stephenson v. State* 494 S.W.2d 900, 908 (Tex.Crim.App.1973). This general rule serves the dual purpose of discouraging "fishing expeditions" in the hopes of impeaching a jury verdict, as well as providing reasonable notice to both the trial court and the State as to the specific instances of misconduct alleged. *Trout,* 702 S.W.2d at 620; *Stephenson,* 494 S.W.2d at 908.

In the present case, that portion of appellant's motion which cites juror misconduct as one basis upon which to grant a new trial refers only to comments made during deliberations. While these particular allegations are supported by an affidavit of one juror attesting to the improper comments made during deliberations, the motion makes no reference to the withholding of information by Ramirez or any other juror during voir dire. If appellant did not know of this instance of misconduct at the time he filed his initial motion, he should have moved to amend the motion to include this instance before the hearing on the motion. By failing to include this instance in his motion, however, this argument was not properly before the trial court, and is not preserved on appeal. *Trout,* 702 S.W.2d at 620. Points two and three are overruled.

### Juror Misconduct: Deliberations

In points four and five, appellant contends that the trial court erred by refusing to grant a new trial because the jury received evidence prejudicial to appellant after it retired to deliberate, and it decided his sentence in an inappropriate manner. Specifically, appellant complains that the jurors mentioned the comment of the disqualified juror discussed under point one that appellant was a member of a gang. He contends that there was no evidence adduced at trial regarding appellant's membership in a gang, and that the jury's consideration of such

2. There are two categories of cases where the information withheld is deemed material, thus warranting a new trial: 1) where a juror withholds information that he has personal knowledge about or was in some way acquainted with either the complainant or the defendant, and 2) where a juror by reason of past personal experi-

ences had the potential to be biased or prejudiced against the defendant. *Petteway v. State,* 758 S.W.2d 861, 865 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Fielder v. State,* 683 S.W.2d 565, 571 (Tex.App.—Fort Worth 1985), *rev'd on other grounds* 756 S.W.2d 309 (1988).

alleged membership was "clearly detrimental," although it does not specify how.

It is well-settled law that the trial judge is the trier of fact at the hearing on a motion for a new trial, and that its decision on such motion rests within its sound discretion, which will not be reversed absent an abuse of discretion. *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993); *Jones v. State,* 596 S.W.2d 134, 138 (Tex.Crim.App.1980). The Rules of Appellate Procedure provide that a new trial shall be granted an accused if the jury receives other evidence after retiring to deliberate. TEX.R.APP.P. 30(b)(7). In order to warrant a new trial, the complaining party must prove that 1) the jurors actually received the information, and 2) the information was detrimental to the accused. *Eckert v. State,* 623 S.W.2d 359, 364 (Tex.Crim.App. 1981); *Stephenson v. State,* 571 S.W.2d 174, 176 (Tex.Crim.App.1978). If there is conflicting evidence as to whether or not the jury received the evidence, the resolution of such fact issue by the trial court will not be reversed absent an abuse of discretion. *Hunt v. State,* 603 S.W.2d 865, 868 (Tex. Crim.App.1980).

■ A new trial is not required every time a juror mentions something which is not supported by evidence adduced at trial. *Stephenson,* 571 S.W.2d at 176. In order to determine whether evidence was 'received,' we look to the context in which it was mentioned, and the extent to which the jurors discussed it. *See Gaona v. State,* 733 S.W.2d 611, 619 (Tex.App.—Corpus Christi 1987, pet. ref'd) (casual passing remark mentioned only once was not 'received' by jury).

At the motion for new trial, there was conflicting evidence as to whether appellant's gang-membership was even discussed. Five jurors testified that they did not recall any discussion of the subject. On the other hand, four jurors testified that they did recall the mention of appellant's gang-membership during deliberations. One of these four jurors, Epigmenio Aguirre, said that when someone mentioned the comment made at voir dire, another jury member immediately said they could not consider it, and it was not dis-

cussed further. Nonetheless, Aguirre said that she felt like some of the jurors considered this in their deliberations because, soon after it was mentioned, they "gave in" to the jurors who felt he was guilty.[3] Another one of the four jurors who recalled it being mentioned, Diana Tanguma, testified that someone commented that appellant did not look like a gang member, to which another juror explained that was because he was dressed up for trial. Tanguma also added that, when this was mentioned, another juror said it was not "part of what we're supposed to be talking about." Two other jurors testified that they remember it being mentioned, but that it was not discussed, and recall being told not to consider it.

■ Because the testimony about the 'discussion' of this subject was conflicting, the trial court had the discretion to overrule the motion for new trial. *Sneed v. State,* 670 S.W.2d 262, 266 (Tex.Crim.App.1984). Appellant has failed to make the first showing necessary to warrant reversal under Rule 30(b)(7); that the information was received by the jurors. Five jurors do not even remember the subject being mentioned, while the four who did recall its mention also recall being admonished not to consider it.

Even if appellant's gang affiliation was improperly mentioned during deliberations, any possible prejudicial discussion was effectively curtailed by the corrective instructions of the juror explaining that such allegations should not be considered during the deliberation. *See Eckert,* 623 S.W.2d at 364 (mere mention of improper evidence did not warrant new trial when immediately followed by corrective instructions). Not one of the jurors testified that they personally considered the question of his possible gang affiliation in passing judgment of guilt or in sentencing. Thus, we find that appellant has failed to establish that the evidence was received by the jury, and therefore, the trial court did not abuse its discretion in denying the motion for new trial on this ground. Appellant's fourth point is overruled.

---

3. Aguirre admitted, however, that she could not recall whether it was mentioned during their

deliberations at the guilt/innocence phase, or in their discussion of punishment.

In point five, appellant asserts that the trial court erred by not granting a new trial because his five-year sentence was not arrived at by a fair expression of opinion by the jurors.[4] In support of this assertion, appellant offers the testimony of several jurors asserting that another juror improperly influenced deliberations. Appellant insists that testimony reflects that Ramirez told fellows jurors that if they gave appellant a ten year sentence, he would only have to serve two or two-and-a-half years. Based on this testimony, appellant contends that the jury adopted a "quotient verdict," which entitled appellant to a new trial.

After reviewing the record of the hearing on the motion for new trial, and the testimony quoted in appellant's brief,[5] we have concluded that appellant's complaint is based on Ramirez's comments during deliberations. Essentially, appellant contends that, because Ramirez held himself out as knowledgeable in the law, and mentioned to other jurors that he would only serve "a small fraction" of the sentence, the integrity of the process was corrupted.

The matter of parole is not a proper consideration for jury deliberation on punishment in their deliberations on punishment in a criminal trial. *O'Bryan v. Estelle,* 714 F.2d 365 (5th Circ.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Felder v. State,* 758 S.W.2d 760, 762 (Tex.Crim.App.1988). This is so because parole is a matter within the exclusive jurisdiction of the Board of Pardon and Paroles and, as such, is not a matter of concern for the jury. *Felder,* 758 S.W.2d at 762. However,

it has been held that, although erroneous, the mere mention among jurors of parole law without more does not constitute error. *Sneed,* 670 S.W.2d at 266. In fact, because the possibility of parole is a matter of common knowledge, the mere discussion by jurors of parole laws, without more, is not necessarily jury misconduct. *Dawkins v. State,* 822 S.W.2d 668, 674 (Tex.App.—Waco 1991), *pet. ref'd per curiam,* 825 S.W.2d 709 (Tex.Crim.App.1992); *Benitez v. State,* 733 S.W.2d 395, 397 (Tex.App.—Fort Worth 1987, pet. ref'd). In order to show reversible error based on the discussion of parole law by the jury, the defendant must prove the following factors:

1) a misstatement of the law;

2) asserted as a fact;

3) by one professing to know the law;

4) which is relied upon by other jurors;

5) who for that reason changed their vote to a harsher punishment.

*Buentello v. State,* 826 S.W.2d 610, 611 (Tex. Crim.App.1992); *Sneed,* 670 S.W.2d at 266.

We have examined the record of the hearing on this issue, and we have determined that the appellant did not meet its burden of proof on all five factors. As the State points out in its brief, Ramirez's "instructions" regarding time actually served did not necessarily misstate the law. Indeed, the court's charge instructed the jury that, although it could not accurately be predicted how the parole law and good conduct time might be applied to the defendant, "under the law applicable to this case, if the defendant is sentenced to a term of imprisonment, he will

---

4. Rule 30(b)(3) of the Rules of Appellate Procedure instruct that "[a] new trial shall be granted an accused ... [w]here the verdict has been decided by lot or in any other manner than by fair expression of opinion by the jurors." TEX. R.APP.P. 30(b)(3).

5. At the hearing on the motion for new trial, appellant's counsel questioned juror Arturo Ortiz as follows:

Q: [A]fter you found Mr. Cuellar guilty and ya'll were discussing punishment, did Mr. Ramirez try to tell ya'll well, if we give him so much time, then he's only going to do so much time, so we need to make sure he gets so much time, *or* did he try and calculate what amount of time Mr. Cuellar would serve?

A: Yes, sir.

Q: Okay, and do you remember what he said?

A: Well, he was mentioning something like, if he would get the ten years, that he would only have to serve—I think it was two and a half or two years, something like that.

Q: Okay.

A: I can't remember exactly.

It is unclear to which part of the initial question that Ortiz responded affirmatively. Nevertheless, the record reflects that Ortiz's recollection of the deliberations were not very clear, as he qualified them phrases such as "something like," "I think it was ...," and "I can't remember exactly."

not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed." Thus, Ramirez's alleged explanation that appellant would serve about two-and-a-half years of a ten year sentence was not necessarily a misstatement of the law.

Moreover, the testimony did not reflect that any of the jurors actually changed their minds in favor of a more severe sentence based upon Ramirez's comments. While several of the jurors testified that Ramirez mentioned that appellant would serve less time than he was actually sentenced to serve, there was no evidence that Ramirez's comments persuaded them to change their minds. We conclude that the trial court did not abuse its discretion in refusing to grant a new trial based on the evidence presented at the hearing on this issue.

### Ineffective Assistance of Counsel

Finally, in point number six, appellant complains that he was denied his constitutional right to effective assistance of counsel. Appellant bases this point on the alleged failure of trial counsel to 1) investigate the facts of the case and interview witnesses, and 2) either request a mistrial or request that the court instruct the jury to disregard the comments of a potential juror who erroneously "informed" the panel that appellant was a gang member who committed murder. In support of this point, appellant asserts that his trial counsel did not investigate the accident, and failing to do so, he did not interview a witness whose testimony, appellant alleges, would possibly have affected the verdict in the case. We have already addressed the harm which appellant claims derived from the comment made by the potential juror during voir dire.

In all criminal proceedings, a person is entitled to the assistance of counsel. U.S. CONST. amend. VI and TEX. CONST. art. I, § 10. In order to establish a claim for ineffective assistance of counsel, a party must show 1) that his counsel's performance was deficient and fell below objective standards of reasonableness, and 2) that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding

would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, the constitutional right to counsel does not mean errorless counsel or counsel deemed ineffective through the benefit of hindsight. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex.Crim.App. 1985). Rather, we must reconstruct the circumstances at the time of the trial, and judge the totality of the representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Given the difficulty of evaluating counsel's performance and strategic choices through hindsight, we indulge a strong presumption that counsel rendered adequate assistance. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim.App.1991) (per curiam).

■ We initially address the claims that trial counsel's failure to investigate the facts of the accident prevented him from discovering two witnesses whose testimony was material. First, appellant cites statements offered by Mary Helen Aleman, who was driving near the scene of the accident immediately prior to its occurrence. Aleman stated that she had been driving ahead of appellant on the street before turning off, and she had seen the vehicle of the victim waiting to turn at the same intersection. She admitted that she did not see the collision occur. She stated that she approached the persons in each vehicle after the incident, noting that the victim was not wearing a seat-belt, that her vehicle had tinted windows, and that when she approached appellant, she did not smell alcohol on his breath, although she was very close to his face. She also testified that she often heard screeching brakes at the intersection, and offered her opinion that the victim may have been partially to blame. Second, appellant offers the testimony of Felipe Vela, who worked near the accident, that the victim was not wearing a seat-belt at the time of the accident. Neither of these two persons was contacted by appellant's trial counsel.

We do not find that any of the testimony offered by these witnesses would likely have altered the verdict. Neither one saw the accident, so their speculation regarding its cause is just that, speculation, no more. With regard to the assertion that the victim

was not wearing a seat-belt, appellant has not explained how such evidence would be relevant to the determination of appellant's guilt or innocence. The fact the Aleman did not smell alcohol on appellant's breath is of slight, if any, import, considering the fact that the results of a test administered within two hours of the accident suggested he was intoxicated.[6] Moreover, the State's expert testified that the sole producing cause of the accident was the high rate of speed at which appellant was driving.

 With regard to counsel's failure to object to the prospective juror's comment, such decision was within the realm of sound trial strategy. Counsel may have decided that it was more preferable not to object to the comment than to call the attention of the jurors to it, for to do so might only have emphasized its prejudicial effect, if indeed it had any. Such a tactic is a strategic choice, and we do not question it on appeal. Without any evidence in the record regarding the reasoning behind the attorney's actions, we cannot say that the representation appellant received was unreasonable to the point of implicating the *Strickland* test. *See Jackson v. State*, 877 S.W.2d 768, 772 (Tex.Crim.App. 1994). Appellant's sixth point is overruled.

The judgment of the trial court is AF-FIRMED.

YANEZ, Justice, concurring.

I am taking the admittedly unorthodox step of concurring to my own opinion in order to address an issue raised by appellant which I consider worthy of our attention. Appellant alleged that the jury foreman lied on his juror information card, and, relying on the juror's responses, defense counsel did not question that juror during voir dire regarding the substance of those responses. Appellant contends that, because the juror withheld material information, appellant was deprived of his right to select a fair and impartial jury. This contention is meritorious and, if properly preserved, may have warranted a new trial.

I recognize the trend toward promulgating rules which reduce the length of trials without compromising the right to due process of law, and the growing emphasis on juror information cards as a useful means of effecting that end. It is well known that judges, prosecutors, and defense attorneys alike rely on the veracity of the responses contained on these cards. However, there is very little case law which addresses the function of these cards, and the degree to which attorneys may rely on their contents without further inquiry during voir dire. In this light, I feel that appellant's claim that a juror lied on a juror information card in a manner that affected the voir dire questioning merits our attention.

When the court distributes jury cards to potential jurors, it does so in the interests of expediency, with the intention of eliciting basic information which would otherwise be brought out during voir dire. *See Miles v. State*, 644 S.W.2d 23, 26 (Tex.App.—El Paso 1982, no pet.). Such cards or questionnaires serve to minimize the length of voir dire.

Technically, the questions posed on such cards are attributed to the court. However, the Court of Criminal Appeals has recently stated that defense counsel is entitled to rely on the questions asked by the court and prosecutor during voir dire. *Armstrong v. State*, 897 S.W.2d 361, 364 n. 1 (Tex.Crim. App.1995). It is well-settled law that counsel may strike jurors based solely on their responses in the jury questionnaires. *See Satterwhite v. State*, 858 S.W.2d 412, 424 (Tex. Crim.App.), *cert. denied*, 510 U.S. 970, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993); *Tompkins v. State*, 774 S.W.2d 195, 204–05 (Tex.Crim. App.1987), *aff'd mem.*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); *Sanchez v. State*, 797 S.W.2d 951, 956 (Tex.App.— Dallas 1990, no pet.); *Chambers v. State*, 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Such cards are considered to be a means of eliciting the possible biases and/or problems of venirepersons. Attorneys may rely on the answers provided in those cards, and based on the cards, must decide whether further inquiry into those

---

**6.** We note also that the passenger in appellant's vehicle testified that both he and appellant had drunk at least two beers each before the accident.

responses is necessary. *Cf. Cornish v. State,* 848 S.W.2d 144, 145 (Tex.Crim.App.1993) (juror information cards may be considered in evaluating a *Batson* claim); *see also Doby v. State,* 910 S.W.2d 79, 81 (Tex.App.—Corpus Christi 1995, pet. ref'd) (attorneys are entitled to rely on, and the court is entitled to consider, responses on juror information cards). Although we have not ruled on this issue, we have suggested that counsel should rely on the responses provided on the cards, rather than pose repetitive questions during voir dire. *See Tobar v. State,* 874 S.W.2d 87, 91 (Tex.App.—Corpus Christi 1994, pet. ref'd).

Were the issue properly before us, I would consider any material misrepresentations made or information withheld by venirepersons on their jury information cards as falling within the category of misconduct sufficient to warrant a new trial.[1] Although we are aware of at least one of our sister courts which has ruled otherwise,[2] I would conclude that when a potential juror answers a question on a jury card in a manner that would not arouse any reasonable suspicion that the juror might be biased or prejudiced, defense counsel is entitled to rely on the truthfulness and accuracy of that response. In such instance, defense counsel should not be required to inquire further into that response during voir dire in order to preserve error.[3] To rule otherwise would undermine one of the primary purposes of the information cards.

Given the significance placed upon these cards by both attorneys and judges as an effective and reliable method of shortening the voir dire process, I write this concurrence with the intention of recognizing their integral role in the voir dire process, as well as the right of counsel to rely of the veracity of those responses without repetitious inquiry.

---

1. *See* Tex.R.App.P. 30(b); *See also Salazar v. State,* 562 S.W.2d 480 (Tex.Crim.App. [Panel Op.] 1978) (discussing effect the withholding of material information by a juror has on the fairness of a trial).

2. In *Landry v. State,* 879 S.W.2d 194, 195 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd), the appellate court addressed a situation where defense counsel relied on a misrepresentation made on a juror information card, and did not pose the same questions again during voir dire. The court concluded that the juror did not "withhold" information, because the attorney was not diligent in asking the proper questions during voir dire. *Id.*

3. I recognize that, in certain instances, a response to a jury card might arouse further inquiries, while others may not. For example, in this case, had Ramirez answered "yes" to each question, counsel might be expected to question him individually on these matters to evaluate their import. In such instances, defense counsel would be notified of a possible prejudice by the response, and his failure to elicit more details during voir dire might constitute a lack of diligence. Also, the clarity of the questions posed is a factor. *Compare Armstrong v. State,* 897 S.W.2d 361, 364 n. 2 (Tex.Crim.App.1995) (juror not considered to have withheld information when question posed was not clear and unambiguous), *with Von January v. State,* 576 S.W.2d 43, 44–45 (Tex.Crim.App.1979) (new trial warranted where juror withheld answer to direct and unambiguous question).