NUMBER 13-98-574-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


JOHNNY SINGLETARY
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 130th District Court


of Matagorda County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Dorsey



 A jury found appellant, Johnny Singletary, guilty of capital murder,
and the trial court assessed his punishment at life in prison. Appellant
appeals by seven points of error. We affirm.

I. Facts


 On June 7, 1997, Officer Andrew Lewis found Linda
Lowenhaupt's body inside a car parked in Bay City, Texas. The next
day appellant gave him a written confession in which he stated that he
had taken a stick about two or three feet long to Lowenhaupt's home
in Palacios. When she came out of the house he hit her in the head
with the stick, put her in the car, took her purse from the house, and
drove her car to Bay City. When he reached Bay City he and another
person parked the car at a plastics plant. At this point Lowenhaupt was
"gasping for air." He laid her down in the back seat and "had sex with
her." 

 After the incident the police recovered a stick from the victim's
residence. Afterwards appellant gave a second written confession to
Lewis in which he stated that an ID officer showed him a stick which
he recognized as the one he had used to hit the victim in the head.

 The medical examiner, Dr. Parungao, testified that the victim died
from a "crushed head . . . due to at least six blunt trauma to the head." 
His testimony showed that the victim could have lived for hours after
receiving the injuries, but she could not have given consent to be driven
from one place to another. 

 II. Motion to Suppress


 By point one appellant asserts that the trial court erred by
overruling his motion to suppress his written confessions. He argues
that the printed warnings on the face of each confession differed from
the warnings required by article 38.22, section 2(b) of the Texas Code
of Criminal Procedure. Therefore the confessions were involuntary and
inadmissible at his trial. The court held a pre-trial hearing on the
voluntariness and admissibility of the confessions. After hearing
testimony the court denied the motion and filed findings of fact and
conclusions of law which stated that (1) prior to making his confessions
appellant was warned of his rights as required by article 38.22, section
2, (2) appellant knowingly waived his right to an attorney, (3) appellant
freely and voluntarily made the confessions, and (4) the warnings on
the face of each confession were in substantial compliance with article
38.22.

 The determination of whether a statement is voluntary is a mixed
question of law and fact; i.e., an application of law to a fact question. 
See Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 1996). Appellate
courts should afford almost total deference to trial courts' rulings on
application of law to fact questions if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor. Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An accused's
written confession is inadmissible unless, prior to giving the confession,
he received the statutorily prescribed warnings. Tex. Code Crim. Proc.
Ann. art. 38.22, § 2 (Vernon 1996). Factual determinations made by the
trial court at a hearing on a motion to suppress evidence shall not be
disturbed on appeal if the record supports those findings. Garcia v.
State, 919 S.W.2d 370, 387 (Tex. Crim. App. 1996) (on reh'g).

 Substantial Compliance


 Article 38.22, section 2 requires that the accused be warned that:

 (1) he has the right to remain silent and not make any
statement at all and that any statement he makes may be
used against him at his trial;


 (2) any statement he makes may be used as evidence
against him in court;


 (3) he has the right to have a lawyer present to advise
him prior to and during any questioning;


 (4) if he is unable to employ a lawyer, he has the right
to have a lawyer appointed to advise him prior to and during
any questioning; and


 (5) he has the right to terminate the interview at any
time;


Tex. Code Crim. Proc. Ann. art.38.22, § 2(a) (Vernon 1996).

 In analyzing the requirements of article 38.22 the court of criminal
appeals has held that "a warning which is only slightly different from
the language of the statute but which conveys the exact meaning of the
statute is sufficient to comply with the statute." Sosa v. State, 769
S.W.2d 909, 916 (Tex. Crim. App. 1989).

 Appellant signed two written confessions that contained printed
warnings on the face of the documents. In his first confession the text
of subsections 1 and 2 of article 38.22(2)(a) appeared on the face of the
document, though stated in synonymous terms, and contained more
language than is required by the statute. Subsection (3) of the statute
requires that an accused be warned that he has "the right to have a
lawyer present to advise him prior to and during any questioning." The
warning on the confession form stated that he "ha[d] the right to
consult with a lawyer of [his] choice before or at any time during any
questioning or statements he [made]." Subsections (3) and (4) of the
statute also require that the accused be warned that he has the right to
have a lawyer present, and if he is unable to employ a lawyer, he has
the right to have a lawyer appointed. The confession form advised
appellant that if he could not "afford" to hire a lawyer, he might
"request and have a lawyer appointed for [him] by the proper authority,
before or any time during any questioning or statements . . . without
cost or expense to [him]." Finally, subsection (5) requires that an
accused be warned of "the right to terminate the interview at any time." 
The confession form advised appellant that he could "stop answering
any questions or making any statements that [he chooses]." 
Additionally the confession form contained other warnings and
language not required by article 38.22(a), but which did not change the
meaning of the statutorily required language.

 In the second confession all warnings required by the statute were
plainly stated on the face of the confession, and it contained little, if
any, superfluous language. The exact wording of the warnings was
slightly different. The only instance where the change in wording had
any meaning at all is where the document states "if you cannot afford
to hire a lawyer, one will be appointed for you." The statutorily required
warning states that if an accused is "unable to employ a lawyer, [he
has] the right to have a lawyer appointed. . . ."

 We find that even though slightly different wording was used in
the confession forms signed by appellant, both contained the warnings
required by the statute. Because the warnings given to appellant
conveyed the exact meaning of the statute we hold they are sufficient
to comply with article 38.22, section 2(a). See Sosa, 769 S.W.2d at
916. Thus the record supports the court's finding that the warnings on
the face of each confession were in substantial compliance with article
38.22.

Voluntariness


 Article 38.22, section 2(b) requires the accused, prior to and
during the making of the statement, to knowingly, intelligently, and
voluntarily waive the rights prescribed by article 38.22, section 2(a). 
Tex. Code Crim. Proc. Ann. art. 38.22, § 2(b) (Vernon 1996). 
Voluntariness is decided by considering the totality of the circumstances
under which the statement was obtained. Creager v. State, 952 S.W.2d
852, 855 (Tex. Crim. App. 1997).

 Officer Lewis testified that appellant understood the rights printed
on the face of each written confession and waived them. Lewis typed
the confessions while appellant told him what had happened. 
Appellant did not ask Lewis to stop the interviews and did not request
an attorney. Appellant read the confessions prior to signing them. 
Lewis testified that appellant was under no duress and was not coerced
into confessing to the murder. Appellant testified that Lewis did not
read him his rights, that he had asked for an attorney, and that he did
not read the confessions. The trial court was within its authority to
believe Lewis and disbelieve appellant. Alvarado v. State, 853 S.W.2d
17, 23 (Tex. Crim. App. 1993). We hold that the record supports the
trial court's findings that appellant did not request an attorney and that
he freely and voluntarily gave the two written confessions. Thus the
court did not abuse its discretion by overruling the motion to suppress. 
We overrule point one.

III. Sufficiency of the Evidence


 By point two appellant challenges the legal(1) and factual sufficiency
of the evidence to support his conviction. In reviewing the legal
sufficiency of the evidence we apply the test in Jackson v. Virginia, 443
U.S. 307 (1979); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). In reviewing the factual sufficiency of the evidence we apply the
test in Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

 The application paragraph of the charge provided that the jury
could convict appellant of capital murder if they found that he
intentionally caused the death of Linda Lowenhaupt by hitting her in the
head with a stick while he was in the course of committing or
attempting to commit the offense of robbery, or kidnaping, or
aggravated sexual assault of the victim. Appellant argues that the
evidence does not show that he committed any of the underlying
felonies. We disagree.

 A person commits the offense of kidnaping when he knowingly or
intentionally abducts another person. Tex. Penal Code. Ann. § 20.03(a)
(Vernon 1994). "Abduct" means to restrain a person with intent to
prevent his liberation by: (B) using or threatening to use deadly force. 
Tex. Penal Code Ann. § 20.01(2) (Vernon Supp. 2000). "'Restraint'
means to restrict a person's movements without consent, so as to
interfere substantially with the person's liberty, by moving the person
from one place to another or by confining the person. Restraint is
'without consent' if it is accomplished by: (A) force. . . ." Tex. Penal
Code Ann. § 20.01(1) (Vernon Supp. 2000). 

 The evidence was that appellant first struck the victim in the head
with a large stick rendering her unconscious, put her in a car, and drove
her to Bay City. This constituted the abduction of her by restraining her
with the intent to prevent her liberation by using deadly force against
her. He restricted the victim's movements without her consent by
using force against her. See Tex. Penal Code Ann. § 20.01(2) (Vernon
Supp. 2000). The victim was alive when appellant reached Bay City
because she was gasping for air. The medical evidence showed that
she could have lived for hours after the attack but that she could not
have consented to being driven to Bay City. The evidence sufficiently
shows that appellant intentionally killed Lowenhaupt while in the
course of kidnaping her. We hold that a rational jury could have found
the elements of capital murder beyond a reasonable doubt. We also
hold that the verdict is not so contrary to the overwhelming weight of
the evidence that it is clearly wrong and unjust. We overrule point two.

IV. Admission of Evidence


 By point three appellant asserts that the trial court erred by
admitting in evidence State's exhibits 26 (oral, anal, and vaginal swabs
taken from the victim during the autopsy) and 26-A (slides made from
those swabs). He argues that the State did not establish a chain of
custody for these exhibits because the medical examiner, Dr. Parungao,
could not identify who took the swabs of the victim. Dr. Parungao
testified that either he or his assistant, under his supervision, took the
swabs. He also testified that the slides were made at his direction. His
testimony was that all of this evidence was recovered during the
autopsy and maintained at the medical examiner's office.

 Without evidence of tampering most questions concerning care
and custody of a substance go to the weight and not the admissibility
of the evidence. Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim.
App. 1997). We reverse a trial court's decision to admit evidence over
an objection to the predicate when we find the trial court abused its
discretion. Smith v. State, 683 S.W.2d 393, 404 (Tex. Crim. App.
1984). Juhasz v. State, 827 S.W.2d 397, 402 (Tex. App.--Corpus Christi
1992, pet. ref'd). The Texas Rules of Evidence provide: "The
requirement of authentication or identification as a condition precedent
to admissibility is satisfied by evidence sufficient to support a finding
that the matter in question is what its proponent claims." Tex. R. Evid.
901(a).

 In the instant case either Dr. Parungao or his assistant, under his
supervision, took the swabs from the body. The slides were made
under his direction. Although Dr. Parungao could not recall who took
the swabs of the body the record does not show that anyone tampered
with or altered these exhibits, and appellant does not challenge the
reliability of this evidence. We hold that the court did not abuse its
discretion by admitting these exhibits in evidence. We overrule point
three.

 By point four appellant asserts that the trial court erred in
admitting the testimony of the State's expert, Laura Schille, a hair-comparison analyst with the Texas Department of Public Safety. She
compared the victim's hair to the hair removed from the stick recovered
at the victim's residence. Appellant sought to prevent the jury from
hearing the results of this comparison.

 Rule 702 provides: "If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto
in the form of an opinion or otherwise. Tex. R. Evid. 702. The trial
court's task in assessing admissibility under Rule 702 is to determine
whether the scientific evidence is sufficiently reliable and relevant to
help the jury in reaching accurate results. Hartman v. State, 946
S.W.2d 60, 62 (Tex. Crim. App. 1997); Kelly v. State, 824 S.W.2d 568,
572 (Tex. Crim. App. 1992). To be considered reliable, evidence based
on a scientific theory must satisfy three criteria: (1) the underlying
scientific theory must be valid; (2) the technique applying the theory
must be valid; and (3) the technique must have been properly applied
on the occasion in question. Hartman, 946 S.W.2d at 62; Kelly, 824
S.W.2d at 573. The Kelly Court also provided a list of non-exclusive
factors that could affect a trial court's determination of reliability. These
are: (1) the extent to which the underlying scientific theory and
technique are accepted as valid by the relevant scientific community, if
such a community can be ascertained; (2) the qualifications of the
expert(s) testifying; (3) the existence of literature supporting or rejecting
the underlying scientific theory and technique; (4) the potential rate of
error of the technique; (5) the availability of other experts to test and
evaluate the technique; (6) the clarity with which the underlying
scientific theory and technique can be explained to the court; and (7)
the experience and skill of the person(s) who applied the technique on
the occasion in question. Kelly, 824 S.W.2d at 573.

 Before novel scientific evidence may be admitted under Rule 702
the proponent must persuade the trial court, by clear and convincing
evidence, that the evidence is reliable and therefore relevant. Kelly, 824
S.W.2d at 573. 

 In this case the trial court held a hearing to determine the
admissibility of Schille's testimony. Schille testified that she had
received her training in hair-comparison analysis at the DPS
headquarters in Austin. In order to become a qualified hair-comparison
analyst she had to complete DPS training in forensic-hair comparison,
work on various hair-comparison cases under direct supervision, and
take several proficiency tests. Schille explained how she tested the hair
found on the stick to the hair taken from the victim's head. She
performed the test at the Houston DPS lab, which was accredited by
the American Society of Crime Laboratory Directors (ASCLD). Schille
testified that within the scientific community hair-comparison analysis
is considered an accepted science and that there is "quite a bit of
publication" on this topic. She gave the names of several journals
which published articles on this topic. She said that there are hair-comparison analysts state wide, nation wide, and internationally. 
Persons performing hair-comparison analysis follow the exact, same
protocols (test procedures). When making the hair-comparison analysis
in this case she followed the same protocols that she had used in other
cases. Schille said that the protocols she used are the same as those
used by the FBI. These protocols were reviewed when ASCLD
performed its accreditation of the Houston DPS lab.

 After the hearing the court made these findings: (1) the analysis
of the hair taken from the stick was probative of the material issue in
the case; (2) the evidence is relevant to matters before the court; (3) the
probative value of the evidence outweighed its prejudicial effect; and (4)
Schille's testimony established by clear and convincing evidence that
the specialized knowledge of hair analysis was long established,
accepted in the scientific community, discussed in scientific literature,
and had long-established protocols to aid the jury in determining the
fact issue in this case. The court denied the motion to exclude the
evidence of hair analysis and allowed the State to present the evidence
to the jury.

 Schille testified before the jury that in her opinion the hair
recovered from the stick "possesses the similar microscopic
characteristics" to the victim's hair.

Reliability 


 The State satisfied the three criteria stated in the Hartman-Kelly
decisions. The proponent of the evidence testified that the underlying
scientific theory is valid and that the technique applying the theory is
valid; that the scientific community considers hair-comparison analysis
an accepted science; and that all hair-comparison analysts, including
Schille, use the same protocols when performing hair analysis. The
testimony was that Schille properly applied the technique in this case. 
The protocols she used to perform the hair analysis are the same as
those used by other analysts. There was evidence of Schille's
qualifications, experience, and skill to perform the test, the existence of
literature supporting the underlying scientific theory and technique, the
availability of other experts to test and evaluate the technique, and the
clarity with which the underlying scientific theory and technique can be
explained to the court.

Relevancy


 Even if the proponent has satisfied the Kelly-Hartman criteria the
trial court may exclude the evidence if it determines that the probative
value is outweighed by some factor identified in Rule 403.(2) The hair-comparison analysis is probative because it helps to corroborate the
confession and shows the similarity of the hair on the stick to the
victim's hair. The evidence is not unfairly prejudicial, does not confuse
the issues, does not mislead the jury, and is not cumulative. We hold
that the evidence supports the trial court's findings and that the court
did not abuse its discretion by admitting Schille's testimony. We
overrule point four.

 By point five appellant asserts that the trial court erred in
admitting his blood specimen in evidence because the person who
drew the blood was not qualified under section 724.017(a) of the Texas
Transportation Code. This section provides that: "Only a physician,
qualified technician, chemist, registered professional nurse, or licensed
vocational nurse may take a blood specimen at the request or order of
a peace officer under this chapter. The blood specimen must be taken
in a sanitary place." Tex. Transp. Code Ann. § 724.017(a) (Vernon 1999)
(emphasis added). However a reading of Chapter 724 reveals that it
applies to alcohol-related offenses and does not control the drawing of
blood specimens for all purposes. See, e.g., Tex. Transp. Code Ann. §§
724.002, 724.011 (Vernon 1999).

 The evidence showed that pursuant to a search warrant Ola Voris
drew appellant's blood at the Matagorda General Hospital in the
presence of Diane Rieger, an identifications officer for the Bay City Police
Department. Voris placed the blood in vials and gave them to Rieger,
who took the blood to the Austin DPS lab. Appellant does not complain
that the procedure used to draw his blood was flawed or that his blood
specimen was tainted during this procedure. We hold that the trial
court did not abuse its discretion by admitting the blood specimen in
evidence. We overrule point five.

V. Jury Misconduct


 By points six and seven appellant asserts that the trial court
abused its discretion in denying his motion for new trial based upon
evidence of juror misconduct. Appellant filed a motion for new trial
which included three affidavits by juror Levander Goodman. His first
affidavit states that during deliberations a lady told him "that there was
another case involving" appellant. In his second affidavit he stated that
he was not "coerced" into deciding that appellant was guilty; rather, he
weighed the evidence against appellant. In his third affidavit Goodman
stated that during a break in the deliberations the foreman asked him
what he could do to get him to vote guilty. Goodman told him that he
needed to look at the evidence. When they resumed deliberations the
foreman said that the State had spent $150,000 on this trial. Goodman
told him to "stop." Goodman stated that no one had forced him to vote
guilty.

 The rules of appellate procedure list specific grounds for which a
new trial must be granted. These grounds include, "when the jury has
engaged in such misconduct that the defendant did not receive a fair
and impartial trial." Tex. R. App. P. 21.3(g). Whether misconduct
occurred is a decision for the trial court, and we will not disturb that
ruling absent an abuse of discretion. Short v. State, 995 S.W.2d 948,
954 (Tex. App.--Fort Worth 1999, pet. ref'd). See Hernandez v. State,
938 S.W.2d 503, 507 (Tex. App.--Waco 1997, pet. ref'd). A new trial is
not required every time a juror mentions something which is not
supported by evidence adduced at trial. Cuellar v. State, 943 S.W.2d
487 (Tex. App.--Corpus Christi 1996, pet. ref'd).

 In the instant case appellant's affidavits are inconclusive. The trial
court could have reasonably concluded that notwithstanding the
assertions in his affidavits Goodman was not coerced into voting to
convict by any conduct of other jury members. Therefore the trial court
did not abuse its discretion in denying appellant's motion for new trial. 
We overrule points six and seven.

 We affirm the trial court's judgment.


 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 13th day of July, 2000.

1. Appellant asserts that the trial court erred by denying his motion for a
directed verdict. A challenge to the trial court's ruling on a motion for directed
verdict is treated as a challenge to the legal sufficiency of the evidence. See
Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (citing Madden v.
State, 799 S.W.2d 683 (Tex. Crim. App. 1990)).
2. Rule 403 provides that the court may exclude relevant evidence "if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.