# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00666-CR

**Daniel Albert Daigger, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 9847, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Albert Daigger was convicted of possessing or transporting chemicals with the intent to manufacture methamphetamine and was sentenced to ninety-nine years' imprisonment. On appeal, he complains that the trial court should have granted his motion for a mistrial during voir dire and that the trial court erred in admitting several exhibits. We affirm the judgment of conviction.

### Motion for Mistrial

During voir dire, one of the members of the venire panel expressed strong feelings about the harm he believed drug use was inflicting on children, explaining that his son had died due to drug use. The panel member then said, "Do you know what that makes me feel like I want to do to that drug dealer?" Daigger's attorney immediately asked to approach the bench, where he stated

that the panel member "pointed specifically at my client and referred to him as a drug dealer in the presence of all the prospective jurors. At this point in time, Your Honor, I do not feel that my client could get a fair trial from this panel. I am asking this Court to declare a mistrial." The prosecutor responded, "I did not see him point at that defendant or indicate anything that connected it with the defendant. I believe what the line of questioning was was [the panel member] went from a generalization about what happens with our children to a specific case upon questioning and at that time made a statement as to sending away drug dealers, but I did not observe him to be pointing at Mr. Daigger." Daigger's attorney again moved for a mistrial "based on what I have seen and heard," and the trial court stated, "I didn't see the affirmative act towards the defendant. I'm going to deny the mistrial, but if you want to challenge him for cause, that's fine." Counsel responded, "I don't see how we're going to rehabilitate this panel having witnessed this individual point at my client with his finger and indicate he's a drug dealer." The trial court called the panel member up to the bench, and Daigger's attorney asked whether the panel member had pointed at Daigger. The panel member said, "No. I was pointing at the death of my son. I was pointing at all drug dealers." Asked whether he had "indicate[d] the defendant" by his gesture, he said, "No. I don't know whether he's guilty or not." At the close of voir dire, Daigger was sworn in and testified that he saw the gesture and believed the panel member had pointed at him and that he believed the "response about drug dealers all needed to be put away again was directed directly at me." Daigger's attorney again moved for a mistrial, and the trial court overruled the motion.

We view a trial court's ruling on a motion for mistrial under an abuse of discretion standard of review. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We consider the

arguments made before the trial court and will uphold the trial court's decision if it falls within the zone of reasonable disagreement. *Id*. A criminal defendant has the constitutional right to be tried by impartial jurors whose verdict is based on the evidence. *Howard v. State*, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996). A defendant claiming that his jury was prejudiced by "external juror influence" must show actual or inherent prejudice. *Id*. In reviewing for inherent prejudice, which is rare and "reserved for extreme situations," "we look to whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Id*. (quoting *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986), and *Bundy v. Dugger*, 850 F.2d 1402, 1424 (11th Cir. 1988)). To show actual prejudice from external juror influence, the defendant must show that jurors "actually articulated a consciousness of some prejudicial effect." *Id*. The court of criminal appeals has held that a spectator's conduct, even if it impeded trial proceedings, would not require reversal unless the defendant showed a reasonable probability that the conduct interfered with the jury's verdict. *Id*.

In this case, Daigger did not request that the venire panel or selected jurors be instructed to disregard the gesture and remark; his sole request was for a mistrial. *See Cuellar v. State*, 943 S.W.2d 487, 490 (Tex. App.—Corpus Christi 1996, pet. ref'd) (court of appeals held that venire member's comment "if he is the gang member," even if taken as affirmative assertion of gang membership, "was not so egregious that its mere utterance deprived [defendant] of a fair trial"; any effect "would have been alleviated through an instruction to disregard the comment, had trial counsel requested it"). He did not question the panel after the incident to determine whether the panel had been tainted by the outburst and did not even inquire as to whether any of the other panel members saw the gesture, which occurred so quickly that neither the trial court nor the prosecutor saw it. The

3

panel member stated that he did not point at Daigger and did not know if Daigger was guilty, but instead was "pointing at the death of [his] son" and "all drug dealers."

Daigger has not shown that this incident was of such a rare and extreme nature as to result in inherent prejudice, nor has he shown any actual prejudice. *See Howard*, 941 S.W.2d at 117. He has not shown that the panel member's outburst tainted the jury panel and resulted in any prejudice against him. Indeed, jurors who were questioned after the exchange stated that they could be fair and impartial and would reach a verdict based solely on the evidence. Daigger has not shown that the trial court abused its discretion in overruling his motion for mistrial. *See Wead*, 129 S.W.3d at 129. We overrule Daigger's first issue on appeal.

**Evidentiary Rulings**

Daigger next complains that the trial court erred in admitting into evidence State's exhibits 8, 9, 10, and 11. He complains that exhibit 11 was not relevant under rule 401 of the rules of evidence and that all four exhibits were more prejudicial than probative under rule 403. A brief explanation of the evidence will provide context in which to examine the contested exhibits.

A trooper with the Department of Public Safety stopped Daigger for running a stop sign. As the trooper approached Daigger's car, he noticed a black tube sticking out of the slightly ajar trunk. Daigger got out of his car as soon as he pulled over, and the trooper became concerned when Daigger would not make eye contact. The trooper smelled an overwhelming odor that, based on his experience and training in hazardous materials, he believed was anhydrous ammonia. Police witnesses testified that anhydrous ammonia is used to manufacture methamphetamine, that it should be stored and transported in certified containers because of its corrosive properties and volatility, that

4

its fumes are very dangerous and can sicken or kill those who inhale it, and that portable propane tanks are often used by drug manufacturers to transport the chemicals needed to make methamphetamine. When the trooper saw three portable propane tanks in Daigger's trunk, he placed Daiggert under arrest and concluded that the canisters were leaking and posed a "poison inhalation hazard." Daigger's car, still containing the canisters, was placed on a flatbed wrecker and driven to a police facility. The police, worried that the tanks might explode, decided to ventilate the tanks by shooting holes in them from a distance and then immediately hosing down the resulting vapors with a fire hose. Spraying ammonia vapors with water brings the vapors to the ground and renders the ammonia harmless. It is standard procedure when dealing with such chemicals to have firefighters and emergency medical personnel on hand.

When the State sought to introduce photographic exhibits 8, 9, and 10, Daigger objected, saying, "Your Honor, we object under Rule 403 to those three." Asked to restate the grounds for his objection, he stated, "Under Rule 403." The trial court overruled Daigger's objection, and a police officer testified about what was depicted in the photographs. The officer testified exhibits 8 and 9 showed him examining the canisters while wearing a protective suit and breathing apparatus. He stated that exhibit 10 showed two fire trucks that were ready to spray any vapors. When the State offered exhibit 11, Daigger said he objected "as it being 401, 403." The trial court overruled the objection, and a police officer described the scene shown in exhibit 11, explaining that it showed visible vapor clouds of ammonia coming from the vented tank and that the firefighters were spraying the cloud with a fire hose to knock the vapors from the air.

5

*Relevance of State's Exhibit 11*

Appellant argues that exhibit 11 is not relevant because it did not show whether the canisters actually contained a controlled substance or were being transported in an unsafe fashion and instead showed only "a perception of danger and hazard."

As with our review of a decision on a motion for mistrial, we review the admission of evidence under an abuse of discretion standard. *Wyatt v. State*, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000). As a general rule, a photographic exhibit is relevant and admissible if verbal testimony as to the subject matter shown in the photograph is also admissible. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Further, if a defendant does not object to the relevancy of the related testimony under rule 401, he waives any error regarding the relevancy of the photograph. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). Daigger did not object to police testimony describing the handling of the canisters, and we cannot hold that law enforcement's handling of these canisters was irrelevant to determining what the canisters contained or the charged offense. The caution with which the police handled the canisters is relevant to their belief that the canisters contained anhydrous ammonia. Thus, the subject matter portrayed in exhibit 11, the spraying of the vapor cloud, was relevant. Even if there was error related to the relevance of the exhibit, it was waived by Daigger's failure to object to the related testimony. *See id.*

*Prejudicial Effect of Exhibits 8, 9, 10, and 11*

Daigger argues that exhibits 8, 9, 10, and 11 were more prejudicial than probative because they did not establish what the canisters contained, but rather "inflame[d] the Jury with a sense of danger" because they showed the caution with which the police treated the canisters.

Initially, we note that Daigger did not explain his rule 403 objections to the trial court except to say that he objected "under Rule 403." Rule 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Daigger's general objection did not put the trial court on notice of the specific danger of unfair prejudice he was asserting. However, even assuming that Daigger's objections preserved error on this issue, we hold that the trial court did not err in admitting the exhibits over Daigger's rule 403 objections.

The rules of evidence favor the admission of relevant evidence and there is a presumption that relevant evidence is more probative than prejudicial. *Jones*, 944 S.W.2d at 652. Rule 403 will require the exclusion of evidence only if there is a "clear disparity" between the probative value of the evidence and the degree of potential prejudice. *Id*. When determining whether a trial court erred in admitting a relevant photographic exhibit, we examine only whether the probative value of the photo was substantially outweighed by the rule 403 risk alleged, in this case, the risk of unfair prejudice. *Wyatt*, 23 S.W.3d at 29.

Daigger does not argue that the police overreacted by handling the canisters with extreme caution, that the canisters did not pose a substantial risk, or that exhibits 8, 9, and 10 are irrelevant (we have already held that exhibit 11 was relevant). He argues only that the photographs prejudiced his case because they encouraged the jury to act on emotion and fear.[1] As discussed

---

[1] This argument is somewhat akin to the argument that autopsy photographs should be excluded as prejudicial in a murder trial; in such cases, autopsy photographs, even if gruesome, generally are admissible because they convey the injuries suffered by a victim. *See Santellan v.*

earlier, the disposal of the canisters as shown in the four photographs was relevant and was described through police testimony. The four photographs are not so alarming in nature that they would have clouded the jury's mind with fear. Instead, they provided a visual depiction of the disposal methods described through police testimony. Daigger has not shown that the trial court abused its discretion in admitting the exhibits over his rule 403 objections. We overrule Daigger's second and third issues.

## Conclusion

Having overruled Daigger's three issues on appeal, we affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 7, 2006

Do Not Publish

---

*State*, 939 S.W.2d 155, 172-73 (Tex. Crim. App. 1997). As the court of criminal appeals has stated, "[T]he matters depicted in the photographs giving rise to appellant's claim that they are 'unfairly prejudicial' emanates from nothing more than the results of what appellant has participated in causing." *Newbury v. State*, 135 S.W.3d 22, 43 (Tex. Crim. App. 2004); *see also Santellan*, 939 S.W.2d at 173 ("[t]he disturbing nature of this picture is primarily due the injuries caused by appellant").