

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00223-CR

**CHARLES CRADDOCK,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 20-01367-CRF-85**

## MEMORANDUM OPINION

Charles Craddock was convicted of the offense of Unlawful Possession of a Firearm by a Felon and sentenced to 55 years in prison. *See* TEX. PENAL CODE § 46.04(a). Because the trial court did not commit jury instruction error, err in admitting evidence, or abuse its discretion in denying Craddock's motion for new trial, and because Craddock did not show his trial counsel was ineffective, the trial court's Nunc Pro Tunc Judgment

of Conviction by Jury is affirmed.

## BACKGROUND

Because the sufficiency of the evidence to support the conviction is not challenged, we only generally recite the background facts in this case.

A Brazos County Sheriff's Office investigator received a tip that two wanted men were staying at a residence on the river in College Station. The investigator decided to check Charles Craddock's home in Navasota, Texas. As the investigator, a sergeant, and other deputies drove down the road to Craddock's home, they saw Craddock and another man, James, on the roadside repairing a truck's flat tire. They contacted Craddock and James and questioned Craddock about whether the two wanted men were in his home. Craddock denied they were at his home. Craddock then gave the deputies permission to search his home for the men and offered to go with them so that his girlfriend, who was inside the home, would not be scared. Once inside the house, the sergeant saw a baggie of drugs in plain view. The wanted men were not located.

Upon exiting the home, the sergeant told the investigator about the baggie. The investigator asked for Craddock's consent to re-enter the home, to which Craddock agreed and signed a consent-to-search form. A full search of the home revealed drugs, drug paraphernalia, a shotgun, a .22 rifle, and a revolver which was found inside a safe. Because Craddock was on parole for a prior murder conviction, he was charged with the unlawful possession of a firearm by a felon. Upon conviction, Craddock filed a motion

and amended motion for new trial.  A hearing was held, and the motion was denied.

Many, if not all, of Craddock's five issues on appeal are multifarious because Craddock bases a single issue on more than one legal theory.  *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010).  Thus, we could reject each issue as inadequately briefed.  *Balderas v. State*, 517 S.W.3d 756, 780 (Tex. Crim. App. 2016).  Nevertheless, in the interest of justice, we will address Craddock's issues as we understand them to be, *see Balderas*, 517 S.W.3d at 780; *Davis*, 329 S.W.3d at 803, although not necessarily in the order presented by Craddock.

**PRESERVED ISSUES—OTHER THAN INEFFECTIVE ASSISTANCE**

We first discuss the issues raised by Craddock that were preserved.

*Article 38.23 Limiting Instruction*

Craddock asserts the trial court erred in denying Craddock's requested article 38.23 instruction, the statutory exclusionary rule, to be included in the court's charge to the jury.

According to article 38.23, no evidence "obtained by an officer … in violation of ... the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America," is admissible in trial against the accused.  TEX. CODE CRIM. PROC. art. 38.23(a); *Aguirre v. State*, 613 S.W.3d 334, 336 (Tex. App.—Waco 2020, no pet.).  Further, in any case where the evidence raises such an issue, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the

Constitution or laws of the United States or Texas, the jury shall disregard that evidence. *See id*.; *Aguirre v. State*, 613 S.W.3d 334, 336 (Tex. App.—Waco 2020, no pet.).

To be entitled to an article 38.23(a) instruction, a defendant must show that (1) an issue of historical fact was raised in front of the jury, (2) the fact was contested by affirmative evidence at trial, and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012); *Aguirre*, 613 S.W.3d at 336. Although evidence to justify an article 38.23(a) instruction can derive "from any source," it must, nevertheless, raise a "factual dispute about how the evidence was obtained." *Id*.; *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). In this context, a cross-examiner's questions do not create a conflict in the evidence, although the witnesses' answers to those questions might. *Id*. Further, where the issue raised by the evidence at trial does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *Robinson*, 377 S.W.3d at 719.

A trial court may not, however, submit a charge that comments on the weight of the evidence. *See* TEX. CODE CRIM. PROC. art. 36.14. A charge comments on the weight of

the evidence if it assumes the truth of a controverted issue or directs undue attention to particular evidence. *See Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *Hawkins v. State*, 656 S.W.2d 70, 73 (Tex. Crim. App. 1983); *Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd).

After the charge conference, Craddock requested, in writing, the following instruction to be included in the charge to the jury:

> You are instructed that under our law, no evidence obtained or derived by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States of America shall be admitted in evidence against the accused on trial of any criminal case.
>
> Now, bearing in mind these instructions, if you find from the evidence that on January 10th, 2020, that Sergeant [], upon his initial entry into the residence, moved items that permitted him to see evidence that would not have otherwise been in plain view, then you must disregard any and all evidence derived therefrom and you will not consider such evidence for any purpose.

This instruction presupposes a controverted fact issue that "Sergeant [] moved items that permitted him to see evidence that would not have otherwise been in plain view." That supposition is not supported by the evidence.

One deputy's job at the scene was to take photographs of everything in its original condition and then take close-up pictures of items located during the search. Before doing that, but after a sweep had been done to look for two wanted individuals, the deputy retrieved a jacket from the house for Craddock's girlfriend. Craddock told him where to locate a leather jacket. While retrieving the jacket, the deputy saw a shotgun

Craddock v. State                                                                                          Page 5

behind the door from which he retrieved the jacket.

The deputy was shown State's Exhibit 38, which he described as a picture of Craddock's bed, State's Exhibit 6, which he described as a picture of a bag of methamphetamine on top of Craddock's bed, and State's Exhibit 39, which he described as a close-up picture of the methamphetamine on the bed. There was no testimony as to how much time elapsed between each picture of the bed and the close-up of the drugs.

On cross-examination, the deputy concurred with defense counsel that a sergeant conducted the initial sweep of the house for the wanted individuals and that the deputy was "potentially" the second person in the house after the sergeant. The deputy agreed that he was not aware if anyone in between him and the sergeant went into the house. The deputy was shown more pictures he had taken when in the house. One, he agreed, was like State's Exhibit 5 (an overview of Craddock's bedroom); and because the pictures were not in order, the deputy believed it was possibly one of the overview pictures taken when he first went through the house. In looking at two other pictures presented to him,[1] the deputy agreed that between the two photos, it appeared a shirt had been moved. There was no testimony as to how much time elapsed between the taking of these two photos.

The deputy said he did not move any items and did not know of anyone else moving items.

---

[1] No exhibit numbers were discussed.

The sergeant testified that he conducted the initial sweep of the house. He was shown pictures, taken by the deputy after the sweep, of Craddock's room from different angles. When questioned, the sergeant specifically denied moving any items and affirmed that he did not know the sequence in which the pictures he was shown were taken.

Craddock's girlfriend testified that she had slept in Craddock's bed and was just getting up when the deputies arrived at the house. She was shown photographs of Craddock's room and insisted that his room was never that messy. She also maintained that none of the items on the bed shown in the photographs, including the bag of methamphetamine found, were there while she was in the room. Based on her recollection, nothing was on the bed but her and a blanket.

After reviewing the record, no affirmative evidence was presented that the sergeant moved any items either before or after Craddock's consent to search was obtained. Thus, there was no factual dispute about how the evidence was obtained, and the trial court did not err in denying Craddock's requested instruction.

Even if the evidence did raise a factual dispute, the requested charge is an impermissible comment on the weight of the evidence because it assumes the truth that the sergeant moved something to be able to see the drugs on Craddock's bed.

This issue is overruled.

*Sua Sponte Limiting Instruction*

Craddock contends that the trial court should have, *sua sponte*, included an instruction in the jury charge on the limited use of Craddock's prior murder conviction. The State introduced Craddock's murder conviction at the end of its case in chief as proof of the prior felony conviction element of the offense for which Craddock was being tried. *See* TEX. PENAL CODE § 46.04(a)(1). The State did not offer the prior conviction for a limited purpose, and Craddock did not request a limiting instruction when the evidence was offered or for inclusion in the charge to the jury. If one could be requested in this situation, it was Craddock's burden to do so. *See* TEX. R. EVID. 105.

If a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes. *Id*. Although the trial court has a *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged, it does not have a similar *sua sponte* duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. *Id*. at 249.

Craddock appears to argue that a limited use of the elemental prior felony conviction is the law applicable to the offense, which requires no action by himself, and should be included in the charge. However, he provides no authority to support his

argument, and we believe such limitation would not be proper. A defendant's prior felony conviction is an essential, substantive element of the offense of unauthorized possession of a firearm by a felon that the State must prove to obtain a conviction. *Russel v. State*, 425 S.W.3d 462, 467 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Any kind of limiting instruction, therefore, would not be required because this evidence is proof of an element of the case. *See Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986). A hypothetically correct jury charge for the offense of unauthorized possession of a firearm by a felon would require the jury to find that the defendant had been previously convicted of a felony and would not include an instruction limiting the jury's consideration of the prior felony conviction. *See Russel*, 425 S.W.3d at 467.

Accordingly, the trial court did not err in failing to *sua sponte* limit the use of Craddock's prior murder conviction in the court's charge. This issue is overruled.

### *Extraneous Offense Evidence*

Craddock complains that the trial court erred in admitting extraneous offense evidence, that being, drugs, drug paraphernalia, and firearms, as contextual evidence or under Rule 404(b) of the Texas Rules of Evidence. At trial, before the sponsoring witness testified, Craddock objected to the introduction of photographic evidence of these extraneous offenses and one physical piece of evidence, one of the two firearms. In response, the State asserted that the evidence was admissible as same transaction contextual evidence and, as to the firearms, those were admissible to rebut Craddock's

defensive theories raised during jury selection. The trial court overruled Craddock's objection.

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard and will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020).

Rule 404(b) prohibits the use of evidence of a crime, wrong, or other act to prove a person's character to show that a person acted in accordance with the character on a particular occasion. TEX. R. EVID. 404(b)(1). The rule provides that the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. 404(b)(2). However, same transaction contextual evidence is admissible to the extent that it is necessary to the jury's understanding of the offense. *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005); *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). That is, it is admissible only when the offense would make little or no sense without also bringing in the same transaction evidence. *Id*. Further, defensive theories presented during voir dire, opening statement, and during cross-examination can open the door to the admission of extraneous offense evidence. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001).

In this case, Craddock consented to the sergeant entering his home to look for two suspects with outstanding warrants. During the initial sweep of the house, a baggie of

methamphetamine was seen on Craddock's bed and "bong-type stuff" was seen on a coffee table, both in plain view. Moments later, when deputies entered the house to retrieve a jacket for Craddock's girlfriend, the shotgun was visible behind the door where the jacket was located, and another baggie of methamphetamine was seen on the top of a hutch. Those observations were communicated either to Craddock or within his hearing and resulted in the request and Craddock's verbal and written permission to search his residence more fully. The discovery of other drug paraphernalia in bags and suitcases during the search of the house pursuant to written authorization then led the officers to ask if drugs were in a safe on the hutch where a baggie of methamphetamine had been seen and, ultimately, the opening of the safe which revealed a handgun. Without evidence of the discovery of the extraneous evidence, the jury would have been limited to hearing that Craddock (1) gave officers consent to look for the suspects in his house and (2) opened the safe, which led to the discovery of the handgun. This would not have made sense to the jury. Consequently, the trial court did not abuse its discretion in admitting the extraneous drug and paraphernalia evidence.

Further, because the evidence of two additional firearms, a .22 rifle and the shotgun, rebutted Craddock's defensive theory of his unknowing possession of any firearm raised during voir dire, the evidence had relevance other than character conformity, and the trial court did not, therefore, abuse its discretion in admitting the testimony about the additional firearms.

This issue is overruled.

**UNPRESERVED ISSUES—OTHER THAN INEFFECTIVE ASSISTANCE**

We next discuss issues raised by Craddock which were not preserved either at trial or on appeal.

*Improper Jury Argument*

In this issue, Craddock complains about six arguments by the State which he contends improperly invited the jury to consider Craddock's prior murder conviction as propensity and impeachment evidence. Craddock did not object to any of the specific arguments made by the State about which Craddock now complains on appeal.

Craddock contends the State's arguments constitute fundamental error of such a nature that an objection was not necessary to preserve error. The Court of Criminal Appeals has expressed that there is no common law "fundamental error" exception to the rules of error preservation. *Proenza v. State*, 541 S.W.3d 786, 793-94 (Tex. Crim. App. 2017). The Court reiterated that it "had already rejected the idea that 'fundamental error,' as a freestanding doctrine of error-preservation, exists independently from" the categorized approach the Court set out in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). *Proenza*, 541 S.W.3d at 793. Craddock does not argue on appeal that the alleged error by the State falls into a *Marin* category that does not require an objection. We will not make that argument for him.

Accordingly, the complaints about the State's arguments are not preserved, *see*

TEX. R. APP. P. 33.1, and Craddock's fundamental error argument on appeal is inadequately briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see also Neville v. State*, 622 S.W.3d 99, 104 (Tex. App.—Waco 2020, no pet.). This issue is overruled.

### Unlawful Detention

Craddock first asserts that the trial court erred when it admitted evidence unlawfully obtained because Craddock was detained without reasonable suspicion. Craddock did not move to suppress evidence seized after Craddock's alleged unlawful detention and did not object on that basis to the introduction of evidence. This issue is not preserved, *see* TEX. R. APP. P. 33.1, and is overruled.

Craddock next asserts that the trial court erred when it overruled his motion for new trial based on the argument that admitted evidence was unlawfully obtained because Craddock was detained without reasonable suspicion.

The Court of Criminal Appeals has held that "[a]n essential element of [a motion for new trial] is that the matter of error relied upon for a new trial must be specifically set forth therein." *Zalman*, 400 S.W.3d at 593-94 (citing *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993); *Harvey v. State*, 150 Tex. Crim. 332, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947)). The defendant is required to allege in the motion sufficient grounds to apprise the trial court and the State of why he believes he is entitled to a new trial. *Zalman*, 400 S.W.3d at 594 (explaining that motion must contain enough detail to give other party

notice of what complaint is about so that party can properly prepare for hearing).

Craddock did not raise a complaint in either his original motion for new trial or in his amended motion for new trial that he was unlawfully detained without reasonable suspicion. Further, no independent claim of an unlawful detention that required a new trial was made at the hearing. Every question asked about the lawfulness of the initial detention pertained to Craddock's ineffective assistance of counsel claim on the same subject. Accordingly, this issue, raised for the first time on appeal, is not preserved. *See* TEX. R. APP. P. 33.1

### *Extraneous Offenses Inadmissible per Rule 403*

In this issue, Craddock complains that the extraneous offense evidence of drug paraphernalia, drugs, and firearms found at his residence was inadmissible because the probative value of this evidence was outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Craddock did not object to the evidence pursuant to this ground as now argued. Accordingly, this issue is not preserved. *See* TEX. R. APP. P. 33.1.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Craddock complains of many instances of the ineffective assistance of his trial counsel. We break these complaints into two categories: 1) those that were raised for the first time on appeal, and 2) those that were raised either in Craddock's motion for new trial or solely at the hearing on the motion for new trial.

*Standard of Review*

Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To establish the first prong, that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness. *Id.* at 687-88; *Hart v. State*, No. PD-0795-21, 2023 Tex. Crim. App. LEXIS 279, at *13 (Crim. App. Apr. 26, 2023). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)). Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight. *Id.*; *Hart*, No. PD-0795-21, 2023 Tex. Crim. App. LEXIS 279, at *14. The Court should make this determination in light of all the circumstances in order to determine if the actions fall outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690; *Hart*, No. PD-0795-21, 2023 Tex. Crim. App. LEXIS 279, at *14.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *Crucet v. State*, 658 S.W.3d 799, 803 (Tex. App.—Waco 2022, pet. ref'd).  The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Crucet*, 658 S.W.3d at 803.  "The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial." *Crucet*, 658 S.W.3d at 803.

"It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings." *Id*.  "The appellant must show that there is a reasonable probability that, but for his or her attorney's errors, the factfinder would have had a reasonable doubt about his or her guilt or that the extent of the punishment imposed would have been less." *Id*. at 803-804; *see also Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002).  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

***Complaints Raised for the First Time on Appeal***

i.       <u>*Failure to Object to Improper Jury Argument*</u>

Craddock contends trial counsel was ineffective in failing to object to several alleged improper arguments made by the State to the jury.  All but one of these specific

instances of ineffective assistance are raised for the first time on appeal.[2]

Claims of ineffective assistance must be firmly rooted in the record. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004). Thus, trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Johnson*, 624 S.W.3d at 586; *Rylander*, 101 S.W.3d at 110-11; *Thompson*, 9 S.W.3d at 814. Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient. *Johnson*, 624 S.W.3d at 586; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

Here, the record is silent as to why trial counsel did not object to the State's alleged improper arguments. Accordingly, we presume counsel's performance was not deficient, and this issue is overruled.

---

[2] Only counsel's failure to object to the State's argument to the jury regarding whether they would believe the officer or Craddock, who was a convicted murderer, was raised before the trial court. This instance of alleged ineffective assistance of counsel will be discussed later.

*ii.*     *Failure to Object to Extraneous Offense Evidence Under Rule 403*

Craddock contends that because his trial counsel failed to object to extraneous offense evidence pursuant to Rule 403 of the Texas Rules of Evidence, trial counsel provided ineffective assistance to Craddock.

As in the previous issue, the record is silent as to why trial counsel did not lodge a Rule 403 objection to the evidence. Accordingly, we presume counsel's performance was not deficient, and this issue is overruled.

**Complaints Raised in Motion for New Trial or Hearing on New Trial**

A defendant may move for a new trial based on ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Thus, when an appellant presents his ineffective assistance claim to the trial court in a motion for new trial, we review the denial of such motion for an abuse of discretion. *Crucet v. State*, 658 S.W.3d 799, 802-03 (Tex. App.—Waco 2022, pet. ref'd). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). In the absence of express findings, as is in this case, we must presume all findings in favor of the prevailing party. *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021).

*i.*     *Failure to Request Limiting Instruction on use of Murder Conviction*

Craddock asserts his trial counsel rendered ineffective assistance when counsel failed to request a limiting instruction on the use of Craddock's prior murder conviction.

As we stated previously, a limiting instruction on the substantive element of a defendant's prior felony conviction for the offense of unauthorized possession of a firearm by a felon is not required because this evidence is proof of an element of the case. *See Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986); *Russel v. State*, 425 S.W.3d 462, 467 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Accordingly, presuming findings in favor of the State, the trial court did not abuse its discretion in denying Craddock's motion for new trial on this ground. This issue is overruled.

ii.     *Failure to Object to Improper Jury Argument*

Craddock contends trial counsel was ineffective in failing to object to the State's argument to the jury regarding whether they would believe a testifying officer or Craddock, who was a convicted murderer.

To successfully assert that trial counsel's failure to object amounts to ineffective assistance, the applicant must show that the trial judge would have committed error in overruling such an objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

Craddock's focus in this issue is that because the prior murder conviction was not admissible for propensity or impeachment, there was no reasonable trial strategy not to object, and because credibility was the heart of Craddock's defense, had trial counsel objected, the result of the trial would have been different if Craddock was deemed credible by the jury. This argument rests on Craddock's proposition discussed

previously that the prior murder conviction cannot be used for anything other than proof of the element that Craddock was a felon. Craddock still provides no case authority for this proposition.

Further, as we said previously, a hypothetically correct jury charge for the offense here would require the jury to find that Craddock had been previously convicted of a felony and would not include an instruction limiting the jury's consideration of the prior conviction. *See Russel v. State*, 425 S.W.3d 462, 467 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Thus, if a limiting instruction in the charge would not be included, an objection seeking to essentially preclude the State's use of the felony as propensity or credibility in its argument would not necessarily be granted.

Accordingly, the trial court did not abuse its discretion in denying Craddock's motion for new trial on this ground, and this issue is overruled.

### iii.  *Failure to Argue Craddock's Detention was Unlawful*

Craddock contends that trial counsel was ineffective for failing to assert that Craddock was unlawfully detained by sheriff's deputies at the side of the road. To support this contention at the motion for new trial hearing, Craddock relied on video evidence from the scene when Craddock was allegedly detained.

Craddock cites to *Crain* for the proposition that because the sergeant allegedly ordered Craddock to "come back here and talk to me" while being "surrounded" by five officers and three vehicles, Craddock was detained. *See Crain v. State*, 315 S.W.3d 43 (Tex.

Crim. App. 2010)(concluding officer's "act of shining his patrol car's overhead lights in the [pedestrian] appellant's direction, coupled with his request-that-sounded-like-an-order, to 'come over here and talk to me,' cause[d] the appellant to yield to [the officer's] show of authority" and a detention occurred).

As noted in *Crain*:

> There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. In determining which category an interaction falls into, courts look at the totality of the circumstances. An encounter is a consensual interaction which the citizen is free to terminate at any time. Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection. An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers.

*Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). An investigative detention occurs, however, when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Id.*; *see also Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013). In determining whether the interaction constituted an encounter or a detention, courts focus on whether the officer conveyed a message that compliance with the officer's request was required—that is, whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id*. Examples of circumstances that might indicate a seizure would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone

of voice indicating that compliance with the officer's request might be compelled. *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

In this case, the sheriff's department had a tip that a wanted person may be at a location by the river and focused on Craddock. The video evidence showed two patrol vehicles initially on a road near three other vehicles: one pickup pulled off in a driveway with a flat tire that James was working on, an SUV pulled off the side of the road from which James retrieved tools, and another unidentified pickup pulled off on the same side of the road as the SUV but opposite from a driveway, and not blocking it, where the disabled vehicle was parked. A third patrol vehicle pulled up further down the road from the rest of the vehicles. Another driveway, which can be seen in the video behind the disabled pickup, is not blocked. The whole road is not blocked by the patrol vehicles either. Had Craddock wanted to leave in a vehicle with a flat or in James' vehicle, he had avenues to do so.

Although several deputies were present, the entire event had a conversational tone. No guns were drawn, and every deputy maintained space between themselves and Craddock and James. The deputies' demeanor was not threatening. Although the sergeant may have said "come back here and talk with me"[3] when the sergeant arrived at the disabled pickup, Craddock joined the sergeant in the middle of the road and answered questions. He was then able to walk back to the disabled pickup to retrieve

---

[3] The audio portion of the videos are difficult to hear the full extent of the conversations.

something where he answered more questions by the investigator. James was able to continue working on the flat tire while talking with a deputy about the tire. Craddock casually spoke with the investigator and then the sergeant. It appeared from the video that Craddock was voluntarily going back to the house with the deputies. The sergeant informed Craddock that Craddock could ride in the backseat if he was more comfortable and then said, "have a seat and then we'll talk," as he was walking from the back of the patrol vehicle to the driver's door.[4]

Viewing the totality of the circumstances in the light most favorable to the trial court's implicit findings and ruling, we hold that this initial contact between Craddock and the sergeant was an encounter, not a detention. Thus, the trial court did not abuse its discretion in denying Craddock's motion for new trial on this complaint of ineffective assistance of counsel. This issue is overruled.

### iv. _Failure to Use Video Evidence to Support Suppression/Art. 38.23 Defenses_

Trial counsel was provided a body-cam video by the State which counsel did not use in his motion to suppress or his request for an article 38.23 instruction. Craddock claims trial counsel was ineffective for this failure because the video would have tipped the credibility scale in Craddock's favor regarding his claim that he involuntarily opened the safe which revealed the gun. Craddock claimed at trial that he felt coerced into opening the safe.

---

[4] Craddock testified at trial that he road in the front seat of the patrol vehicle to his house.

Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One of those exceptions is a search conducted pursuant to the person's voluntary consent. *Sullivan v. State*, 622 S.W.3d 415, 418 (Tex. App.—Waco 2020, pet. ref'd). The voluntariness of a person's consent is a question of fact that is determined by analyzing all the circumstances of a particular situation. *Meekins*, 340 S.W.3d at 459. Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Id.* at 460. When there are no written findings explaining the factual basis for the trial judge's decision, we imply findings of fact that support his ruling so long as the evidence supports those implied findings. *Id.*

At trial, the judge and the jury heard from deputies that Craddock verbally consented to the search of his house for two wanted individuals and then signed a consent to search form to search the house again because drugs had been seen during the search for the individuals.[5] Craddock testified at trial that, during the second search of the house, the investigator asked if Craddock would open the safe. Craddock said he would. This is in line with the investigator's testimony about how the safe was opened. Although Craddock conditioned his action with, "what choice d[id] I have?," he

---

[5] Craddock disputed at trial that this form was voluntarily signed, but that is not the issue raised here.

reaffirmed on cross-examination that he voluntarily opened the safe:

And then you proceeded to open the safe; correct?

A. Yes, ma'am.

Q. No one was holding a gun to your head and forcing you to?

A. No, ma'am, they weren't.

Q. No one threatened you to open that safe, did they?

A. No, ma'am, they did not.

Q. No one told you you would be arrested if you didn't open that safe, did they?

A. No, ma'am, they did not.

The body cam videos were introduced at the hearing on the motion for new trial. On appeal, Craddock claims the video shows that the investigator did not ask him to open the safe but rather, told him to do so; thus supporting Craddock's claim at trial that he felt coerced to open the safe. It did not.

The video shows the investigator having a conversation on a cell phone. The investigator was relaying the events of opening of the safe to an unknown person:

> So was there any dope in there, in the safe. He said "no." 'Cause originally he, he has, he said, you know, he was at, trying to distance himself from it. But when he said no, there's no dope in there, I said, ***"Well, then open it up 'cause you know what's in there."*** And so he types in the code and it opens it up and [] guns in there. He said all there is is guns. So. I mean he has a code to open it up. He did it for us and knows that there is guns in there, so. You know.

(Emphasis added). It is the statement, "Well, then open it up 'cause you know what's in

there" that Craddock believes shows he was ordered to open the safe. This is not the only interpretation. The trial court's implied determination was that when Craddock admitted to the investigator that he knew there were no drugs in the safe, the investigator's response, based on his tone and demeanor, was simply a request such as, "If you know there are no drugs in there, why don't you just go ahead and open it up," not an order.

Craddock also protests on appeal to what transpired moments after the investigator's statement. The video shows the investigator on the phone, apparently listening to what was being said by the unknown person at the other end of the conversation. The audio portion of the video is then shut off by the deputy using his body-cam to record what was happening. The sergeant begins a conversation with the deputy while the investigator is still on the phone. The investigator ends the call and begins to have a conversation with the other two officers. They start to walk away together when the deputy turns the audio back on. Craddock contends that, at this point, the deputy assures the investigator the audio was muted during the call. That is not what transpired. Instead, what can be heard is:

You should be rolling.

I am now. Yeah, I miss-that was on me a minute ago. I guess…

Thus, after analyzing all the circumstances of a particular situation, any determination on the voluntariness of Craddock's "consent" in opening the safe would

not have been clearly erroneous had the video been introduced into evidence by trial counsel.  Accordingly, the trial court did not abuse its discretion in denying the motion for new trial on this issue, and it is overruled.

     *v.*      <u>*Failure to Inspect Discovery Material Regarding Stipulation or Failure to Object to Admission of Records not Provided in Discovery*</u>

In the first part of this issue, Craddock contends trial counsel was ineffective in failing to inspect discovery material before advising Craddock not to stipulate to the murder conviction.  Specifically, Craddock's sole concern in this sub-issue is that the jury learned Craddock had been convicted of murdering a person in the same county as the instant offense when, if trial counsel had stipulated to the conviction, the jury would not have learned that information.

To establish unlawful possession of a firearm by a felon, the State must show that the predicate felony was a final conviction.  *See* TEX. PENAL CODE § 46.04(a).  A conviction from which an appeal has been taken is not considered to be a final conviction until the conviction is affirmed by the appellate court and that court's mandate of affirmance becomes final.  *Jones v. State*, 711 S.W.2d 634, 636 (Tex. Crim. App. 1986).  A defendant can stipulate to the prior conviction.  *See Tamez v. State*, 11 S.W.3d 198 (Tex. Crim. App. 2000).

At the end of its case in chief, the State introduced certified copies of the indictment for murder, the trial court's judgment of conviction for murder, and the mandate from the court of appeals regarding the same trial court number listed on the judgment of

Craddock v. State                                                  Page 27

conviction. At the motion for new trial hearing, trial counsel testified that it was Craddock's decision whether or not to stipulate. Trial counsel and Craddock had hoped the State did not have the mandate for the murder conviction so that it would not be able to prove a final felony conviction. Trial counsel stated that if he had been certain the State had the mandate, he would have encouraged Craddock to stipulate to the conviction.

However, before the evidence proving the murder conviction was admitted, the jury had already heard that Craddock was convicted of murder in the same county as the felon in possession offense when the State read the indictment. *See Martin v. State*, 200 S.W.3d 635, 640 (Tex. Crim. App. 2006) (State may read the entire indictment). Further, even if Craddock had stipulated to the murder conviction, the State would have been able to offer the stipulation into evidence. *Id.; Hollen v. State*, 117 S.W.3d 798, 801-8022 (Tex. Crim. App. 2003). While the jury may not have ultimately learned the name of the murder victim if Craddock had stipulated, depending on the content of the stipulation, the name of the victim is not the sort of evidence that would change the result of Craddock's trial. Accordingly, the trial court did not abuse its discretion in denying Craddock's motion for new trial on this basis, and this sub-issue is overruled.

In the second part of this issue, Craddock contends trial counsel was ineffective for failing to object to the admission of the mandate when it was not provided by the State in response to Craddock's article 39.14 discovery request. Specifically, Craddock contends that had trial counsel objected to the introduction to the mandate pursuant to

article 39.14 of the Texas Code of Criminal Procedure, the mandate would have been excluded and the State would not have been able to prove the element of the final felony conviction.

Under article 39.14, "as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of….other tangible things not otherwise privileged that…contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state." TEX. CODE CRIM. PROC. art. 39.14(a).

When trial counsel requested "all other tangible things that are subject to being copied or reproduced that may contain evidence material to this action that are in possession or control of the District Attorney's Office…," the State had already provided trial counsel with its notice of intent to offer extraneous conduct evidence against Craddock. Included in the notice was Craddock's murder conviction. Also in this notice, trial counsel was informed that if he wanted to view copies of the prior convictions listed, he could do so at the District Attorney's Office by appointment at a reasonable time. At some point, the State prepared an Agreed Discovery Receipt Report in which was described what was provided to trial counsel, when, and by what means. At the hearing on the motion for new trial, trial counsel confirmed that he received some records but not the mandate. It was unclear from the trial record what records counsel received. Trial

counsel also confirmed that he did not set up a time to review the murder conviction documents at the District Attorney's Office as he was informed he could do. It was not developed in hearing on the motion for new trial whether the mandate was contained within the records at the District Attorney's Office.

Based on the record before us, we do not know the mandate would have been excluded had trial counsel objected. Article 39.14(a) requires the State to make the items available for inspection. It did, and counsel did not avail himself of that opportunity. Although the mandate may have been excluded if trial counsel had objected, *see Watkins v. State*, 619 S.W.3d 265, 291 (Tex. Crim. App. 2021), there is nothing to suggest the finality of the conviction could not have been proven by other means, for example, through cross-examination of Craddock. *See Flowers v. State*, 220 S.W.3d 919, 921-922 (Tex. Crim. App. 2007). *See also Henry v. State*, 509 S.W.3d 915 (Tex. Crim. App. 2016).

Accordingly, the trial court did not abuse its discretion in denying the motion for new trial for this reason, and this sub-issue is overruled.

>   *vi.*     *Introducing Inflammatory Evidence of Prior Murder Conviction*

Craddock complains that his trial counsel was ineffective for questioning him about his prior murder conviction such as when it occurred, the length of his sentence, and how many years he served in prison. Specifically, Craddock complains that the prior conviction was not admissible for any purpose other than proving the felon element of the offense of felon in possession; thus, there was no reasonable strategy for eliciting

"details" of the conviction.  We disagree with Craddock.

The jury already had before it in the form of the indictment and judgment of conviction that Craddock was convicted of murder and was assessed a 45-year sentence. And, as we noted previously, the use of a defendant's prior felony conviction for the offense of unauthorized possession of a firearm by a felon would not be limited because it is proof of an element of the case.  *See Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986); *Russel v. State*, 425 S.W.3d 462, 467 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).  Further, because Craddock used his parole status to negate his knowledge of the handgun found in the safe,[6] counsel's question as to when Craddock was released on parole was potential trial strategy.

Accordingly, the trial court did not abuse its discretion in denying Craddock's motion for new trial as to this complaint.  This issue is overruled.

### vii.    *Failing to Call or Secure Mitigating Witnesses for Punishment*

Craddock contends trial counsel failed to call mitigating witnesses during the punishment phase of the trial.  To obtain relief on an ineffective assistance of counsel claim based on uncalled witnesses, a defendant must show that the witnesses had been available to testify and that their testimony would have been of some benefit to the defense. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *King v. State*, 649 S.W.2d

---

[6] "I assumed it was going to be gone.  That's why I went—look, I'm on parole.  I'm on parole.  An idiot would know better than to open the safe if you know there's a gun in there.  I assumed it was gone."

42, 44 (Tex. Crim. App. 1983) ("Counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.").

Craddock listed seven potential mitigating witnesses in his affidavit in support of his ineffective assistance of counsel claim in his motion for new trial. At the hearing on the motion for new trial, trial counsel stated that Craddock did not want anyone testifying on his behalf. Trial counsel also stated that counsel spoke to Craddock's sister about testifying for Craddock; but the sister told counsel she would have to check with Craddock first. When the sister did not appear at the punishment hearing, counsel believed she chose not to testify. Aside from this testimony, Craddock failed to show in either his motion for new trial or at the hearing on the motion that any of the other witnesses were available to testify or that Craddock would benefit from their testimony. Accordingly, the trial court did not abuse its discretion in denying Craddock's motion for new trial, and this issue is overruled.

### viii.    *Failing to Object to Inadmissible Evidence on Punishment*

Lastly, Craddock complains that his counsel was ineffective for failing to object to allegedly inadmissible evidence concerning Craddock's criminal history and bad acts. Specifically, Craddock complains about the admission without objection of State's Exhibit 89 which contained, among other items, a summary by an unknown person in response to an interview of Craddock in 1991. According to Craddock, this summary contained

allegations of eighteen prior arrests, several probation revocations and parole violations, and other bad acts information. Also according to Craddock, the summary was the only evidence for at least twelve of the alleged prior arrests and convictions and all of the parole violations.

The trial court, rather than the jury, assessed Craddock's punishment. Craddock claims that the trial court was greatly influenced by the summary. In his brief, he states,

> Because the trial court quoted the parole record excerpts when it outlined the basis for its decision on punishment and, after quoting the excerpts and sentencing Appellant to 55 years confinement stated, 'I just think that that's the appropriate sentence for everything I've just talked about', we know the trial court relied on this inadmissible evidence when it assessed punishment.

This is not what occurred.

Rather, the trial court considered all the exhibits admitted in evidence at the punishment phase of the trial as well as other items that were admitted at the guilt/innocence phase. It used the summary for personal information such as Craddock's birthday and work history. The trial court detailed why he punished Craddock as he did, and it was not because of what was contained in the summary. The court did not consider the summary to be a reliable source of information because it was the result of an interview by "someone who I don't know, I'm not taking it for carrying a whole lot of weight or reliability." Then the court stated that, after going through everything in the case, he did not think he would assess a life sentence. However, the court related it's philosophy about punishment for repeat offenders: if he did not teach defendants

anything the first time, punishment is worse every time they come back. The trial court stressed to Craddock, "You shouldn't have had weapons, period, whatsoever." He then assessed punishment at 55 years in prison which was 10 more years than the punishment Craddock received on the murder conviction. The trial court believed the sentence was appropriate after everything stated on the record which consumed over five pages of the record, not just the summary.

After reviewing the record, we hold the trial court did not abuse its discretion in denying Craddock's motion for new trial, and this issue is overruled.

**CONCLUSION**

Having overruled each issue raised on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
 Justice Johnson, and
 Justice Smith
Affirmed
Opinion delivered and filed June 14, 2023
Do not publish
[CRPM]

